1  MAURIZIO A. MANGINI, Esq. Bar #158432
2  2424 Vista Way, Suite 200
   Oceanside, CA 92054
3  Tel: 760-722-7567
4  Email: mmangini@northcountylaw.com

5  SUZANNE SKOLNICK, Esq., Bar #211076
6  2170 S. El Camino Real, #206
   Oceanside, CA 92054
7  Telephone:  (760) 585-7092
8  Email: suzanne@skolnicklawgroup.com
   Attorneys for Plaintiffs, Estate of Jose Ramon
9  Cervantes Conejo; Guadalupe Conejo Ramirez

10         **UNITED STATES DISTRICT COURT**
11         **SOUTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| THE ESTATE OF JOSE RAMON CERVANTES CONEJO by and through its Substituted Successor-In-Interest, FABIAN CERVANTES GARCIA; And GUADALUPE CONEJO RAMIREZ, <br>           Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO; PAUL MATA; DANA CASTLEBERRY; NHI NGOC DAI; NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; NOMINAL DEFENDANT MARITZA BENITEZ; NOMINAL DEFENDANT JOSE ALBERTO QUINTERO and DOES 1-35, Inclusive, <br>           Defendants. | Case Nos.: 25-CV-01143 TWR (DDL); <br>         25-CV-01823 TWR (DDL) <br><br> **PLAINTIFFS (a)ESTATE OF CONEJO AND (b) GUADALUPE RAMIREZ'S <u>CONSOLIDATED</u> OPPOSITIONS TO:** <br> **(1) COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [Dkt. 32 thru 32-3] and** <br> **(2) NAPHCARE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [Dkt. 38]** <br><br> ***[Filed Concurrently with Declaration of Suzanne Skolnick in Support of Plaintiffs' Consolidated Opposition]*** <br><br> **Date: December 18, 2025** <br> **Time: 1:30 p.m.** <br> **Courtroom: 14A** <br> **Judge: Hon. Todd W. Robinson** <br> **ORAL ARGUMENT REQUESTED** |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    Naphcare Defendants' Motion is Untimely & Filed Without Leave ..............1

II.    Introduction and Statement of Facts As to All Defendants ...........................2

III.    Legal Standard ...................................................................................................5

IV.    The SAC Provides Sufficient Notice to All Defendants ................................5

V.    Standing: The Survival Claim is Separate Property ....................................6

VI.    Deliberate Indifference is Adequately Alleged Against All Defendants ........7

VII.    Familial Association is Adequately Alleged Against All Defendants ..........11

VIII.    3rd and 4th Supervisory Liability Claims are Adequately Alleged ...............13

IX.    Plaintiff's Monell Claims Are Sufficiently Alleged......................................15

X.    § 844.6 Immunity Doesn't Apply to Plaintiffs' State Law Claims  .............19

XI.    The Wrongful Death Claims Are Not "Split" & Are Properly Pled .............20

XII.    §377.60 – Wrongful Death Claim is Adequately Alleged ...........................20

XIII.    Medical Negligence & Negligence Are Adequately Stated..........................22

XIV.    The Bane Act Claim is Adequately Alleged as Against All Defendants ......23

XV.    Defendants are Not Entitled to Qualified Immunity ("QI") ........................24

XVI.    §845.6 (Failure to Summon Medical Care) as to Naphcare Defendants.......25

XVII. Conclusion ........................................................................................................25

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO
COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................24

*Arellano v. Sedighi*, 2020 U.S. Dist. LEXIS 182939, *78 (S.D. Cal. Oct. 1, 2020) ...............................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................5

*Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696 (9th Cir. 1990) ...........................5

*Barker v. Riverside County Office of Educ.* 584 F.3d 821 (9th Cir. 2009) ................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................5

*Campos v. Cty. of Los Angeles*, 2012 U.S. Dist. LEXIS 120743, 2012 WL 3656518 at *1-*3 (C.D. Cal. Aug. 23, 2012) .........................................................7

*City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). ...............................................................................................16

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) ...........................................................................................11, 13

*DeGrassi v. City of Glendora*, 207 F.3d 636 (9th Cir. 2000) .................................24

*Dennis v. Sparks*, 449 U.S. 24 (1980) ................................................................24

*Estate of Brandon Yates v. County of San Diego, et al, Case No: 25-cv-0410-W-MMP*...............................................................................................18

*Estate of Keith Bach v. County of San Diego, et. al, Case No. 3:24-cv-01687*.......18

*Estate of Roselee Bartolacci v. County of San Diego, et al*. Case No.: 24-cv-01156-WQH-JLB...............................................................................10

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...............................................................24

*Frary v. County of Marin*, 2012 U.S. Dist. LEXIS 177517, at *23 (N.D. Cal. Dec. 13, 2012...............................................................................................14

*Gant v. Cnty. of L.A.*, 772 F.3d 608 (9th Cir. 2014) .................................................23

*Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) ........................................7

*Greer v. Cnty. of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2021 U.S. Dist. LEXIS 29224, at *27 (S.D. Cal. Feb. 16, 2021) .................................................23

*Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989). .......................................................14

*Hunter v. County of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) ...........................19

*Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988). ......................................9

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006). ..........................................................9

*K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970 (N.D. Cal. 2016)...........23

*Lapachet v. California Forensic Med. Grp., Inc.,* 313 F. Supp. 3d 1183 (E.D. Cal. 2018) ...........................................................................................................23

*Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062 (9th Cir. 2013) .................11

*Mendiola-Martinez v. Arpaio*, 836 F.3d 1239 (9th Cir. 2016). ................................16

*M.H. v. Cty. of Alameda, 90 F. Supp. 3d 889 (N.D. Cal. 2013)* ...............................21

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ........ 15-18

*Rosales v. Cnty. of San Diego*, 511 F. Supp. 3d 1070 (S.D. Cal. 2021).................11

*Rosenbaum v. Washoe Cnty.,* 663 F.3d 1071 (9th Cir.2011)....................................11

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) ........................ 9-10

*Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064(E.D. Cal. 2018) ...............................23

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ..........................................................14

*Thompson v. Upshur County, Tex.*, 245 F.3d 447 (5th Cir. 2001) .............................8

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999)..............................................6

**State Cases**

*Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017) .........24

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal 4th 291 (1995)...................25

iii

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

**Federal Statutes**

42 U.S.C. § 1983 ........................................................................................7, 14, 16, 24

U.S. Constitution 14th Amendment ..................................................................7, 19

**State Statutes**

Code of Civ. Proc.

    § 377.10(b) ...............................................................................................6

    § 377.32 .....................................................................................................6

    §377.60 ...........................................................................................20, 22

Civil Code

    §52.1 ("Bane Act") .......................................................................... 21-23, 25

Family Code

    § 781(a)(2) .................................................................................................6

Govt. Code:

    § 815.2 ..............................................................................................20, 23

    § 815.2(a) .................................................................................................24

    § 844.6 .............................................................................................. 19-20

    §845.6 ........................................................................................... 20-21, 25

Probate Code

    § 6402 .......................................................................................................7

    § 640l(c)(2)(A) ..........................................................................................6

    § 6402(a) ...................................................................................................7

Cal. Code Regs. Tit. 15, § 1207 ..........................................................................9

**Other Authorities**

FRCP Rule 6(b) .....................................................................................................2

Fed. R. Civ. P. 12(b)(6) ......................................................................................5, 9

iv

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO
COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

NCCHC Standards ..........................................................................3, 8, 13, 14, 17, 23

San Diego County Jail Policy Number E.2.1...........................................................9

San Diego County Jail Policy Number M.9 .............................................................8

https://www.sandiegouniontribune.com/2025/09/27/in-rare-move-san-diego-county-sues-its-own-jail-healthcare-providers-over-brutal-cellmate-killing/ .. 18-19

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

Plaintiffs Estate of Jose Ramon Cervantes Conejo by and through its successor-in-interest Fabian Cervantes Garcia and Guadalupe Conejo Ramirez (collectively "Garcia/Ramirez"), in compliance with this Court's Civil Standing Order Section III.B.3. requiring consolidated briefing, hereby submits this **Consolidated Opposition** to the following Motions to Dismiss Garcia/Ramirez's Second Amended Complaint ("SAC" - 25-CV-01823 TWR (DDL), Dkt. 15):

(1) Defendants County of San Diego, Paul Mata and Dana Castleberry's (collectively "County Defendants") Motion to Dismiss Garcia/Ramirez's Second Amended Complaint [Dkt. 32 thru 32-3]; and

(2) Defendants Nhi Ngoc Dai ("Dai"), NaphCare, Inc., and NaphCare of San Diego, LLC's (collectively "Naphcare Defendants") Consolidated Motion to dismiss Garcia/Ramirez' Second Amended Complaint [Dkt. 38].

As set forth in the *Declaration of Suzanne Skolnick in support of Garcia/Ramirez's Consolidated Oppositions to Motions to Dismiss* ["Skolnick Decl."], filed herewith, counsel for Garcia/Ramirez met, conferred, and provided our draft joint opposition briefs to counsel for Benitez/Quintero plaintiffs and the parties made a good faith effort to coordinate and consolidate their briefing to Defendants' various motions but determined that to avoid potential conflicts of interest, briefing should be consolidated in a manner where *each* group of plaintiffs file one consolidated opposition brief to all of the Defendants' pending motions to dismiss. [Skolnick Decl. ¶¶1-5]. All paragraph references to Garcia/Ramirez's SAC herein refer to the SAC filed in case no. 25-CV-01823 TWR (DDL), Dkt. 15.

**Relief Requested:** Naphcare Defendants' motion should be denied as untimely; both County and Naphcare Defendants' motions should be denied as Plaintiffs have adequately alleged claims and no immunities apply. In the alternative, leave to amend Plaintiff's SAC should be granted.

# I. Naphcare Defendants' Motion is Untimely & Filed Without Leave

The Court ordered responsive pleadings to the complaints to be filed by <u>October</u>

1

10, 2025.    (Dkt. 14 Case 3:25-cv-01823-TWR-DDL).    After filing several *unconsolidated* motions to dismiss in violation of this Court's Civil Standing Order Section III.B.3 which were stricken, Naphcare ultimately filed their Consolidated Motion to Dismiss on October 28, 2025(Dkt. 38), 18 days late and without seeking leave of Court to file a late motion as required by FRCP Rule 6(b).    The motion was also not filed and served within 3 days of receiving the motion hearing date in violation of this Court's Standing Order § III.B.1, therefore, depriving Plaintiffs of full time to respond.    Naphcare's motion is thus untimely and should be denied

## II.    Introduction and Statement of Facts As to All Defendants

Jose Ramon Cervantes Conejo ("Mr. Conejo") was 43 years old at the time of his death. (¶29) After being arrested by Escondido Police for being drunk in public, he was booked into the Vista Detention Facility ("VDF") on March 28, 2024, at 9:57 p.m.. (¶30) Jail medical records indicate Mr. Conejo entered VDF with no signs of a head injury.(¶31) At the time Mr. Conejo entered VDF, staff knew that he was acutely intoxicated, was experiencing alcohol withdrawal symptoms and had a history of seizures. (¶¶30; 32-33) County medical staff Paul Mata, RN and Dana Castleberry, RN and Naphcare physician assistant Nhi Ngoc Dai knew that due to Mr. Conejo's condition he required anti-seizure medications, close supervision and a low bunk for his safety.  (¶¶36-38, 47, 50, 51) Mata, Castleberry, Dai and Does 1-30 knew Mr. Conejo was disoriented (¶47), had tremors (¶¶33, 47), slurred speech, (¶¶33, 47), in withdrawal (¶47), had poor balance/unsteady gait (¶¶32, 47),  suffered from seizures (¶47), and had nausea and vomiting(¶¶33, 47).    They knew he was unable to sign informed consent forms (¶32).    Said Defendants knew that Mr. Conejo's history of excessive alcohol use met the criteria for a benzodiazepam taper to treat withdrawal symptoms (¶32, 36).    Mata, Castleberry, Dai and Does 1-30 knew that Mr. Conejo had not taken necessary medications to treat his withdrawal (¶49) and they didn't communicate his need for a low bunk to other jail staff (¶50) Said Defendants took no action to

ensure he received medications he needed and/or an immediate referral to the ER and/or appropriate housing that would provide close medical monitoring (¶51).

Mr. Conejo's condition triggered application of NCCHC Standards which Defendants were required to follow but didn't, wherein inmates with severe, life-threatening intoxication/withdrawal are to be transferred immediately to the ER and that inmates at risk for worsening withdrawal kept under constant observation. (¶¶11-12, 35) Naphcare, Inc. and Naphcare San Diego, LLC were contractors who employed, supervised, and trained medical staff at VDF (¶¶11-12) including Dai. Naphcare's contract with the County also required that its employees/agents be trained to follow NCCHC standards. (¶11) Mata, Castleberry, Dai and Does 1-30 didn't follow jail policy which required Mr. Conejo's immediate referral to the ER for further evaluation, treatment and/or medical clearance (¶¶35a, 52-52a). Said Defendants made intentional decisions concerning Mr. Conejo's confinement including, among others: not immediately summoning medical care (paramedics) to transport Mr. Conejo to the hospital; not administering withdrawal medications immediately; not properly communicating to jail staff his medical condition and the need for close medical monitoring; frequent cell safety checks; specialized housing; specialized bunk requirements; and not providing close medical monitoring of Mr. Conejo's deteriorating symptoms. (¶52a)

Mata's Medical Clearance Assessment of Mr. Conejo was incomplete and failed to mark that he was confused, had altered mental status, intoxicated, in withdrawal, had slurred speech, unsteady gait, stupor, was tremulous, disoriented, and had a history of seizures.(¶33). Before completing the Receiving Screening form, Mata completed a separate CIWA form where he recorded symptoms such as tremors, vomiting, slurred speech, and disorientation. (¶ 33)Mata then falsely marked on the Receiving Screening form that Mr. Conejo had no disability or withdrawal risk—even though Mata noted he drinks 12 beers two times per week and had recent alcohol use.(¶33) On a separate Comprehensive Detox Screen form

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

also completed before the Receiving Screening form, Mata marked "none of the above" in response to question #4 relating to whether Mr. Conejo was experiencing symptoms including tremors, shakes, nausea or vomiting due to withdrawal.(¶33) Mata did not refer Mr. Conejo to a hospital, or assign him to a sobering or medical safety cell which required safety checks every 20-30 minutes, nor did he halt the booking process per jail policy. (¶ 33) Had Mata accurately completed the Assessment and Receiving forms, Mr. Conejo would have been immediately sent to the ER or would have been placed in specialized housing with frequent safety checks/medical monitoring. (¶34) Instead, the jail vital signs log indicates vitals were checked once in jail at 10:19 pm March 28, 2024, and a second time at 2:16 am on March 29, 2024 (*after* Mr. Conejo had already left the jail).(¶34)

Nurse Castleberry knew that Mr. Conejo needed to take withdrawal medications immediately, but he did not take them, and she failed to ensure he received them. (¶ 37) She was required to identify any medications refused on forms but didn't.(¶ 37)She knew he was being housed in unsafe housing, yet allowed him to remain there, exposing him to danger. (¶ 37) Dai's duties included medical assessments and referrals for further treatment and she was employed by County's Contractor (¶10) – here, the Naphcare entities.  Dai assessed Mr. Conejo at 10:34 p.m. on March 28, 2024.(¶36) Dai's assessment noted that Mr. Conejo reported recent and/or significant alcohol use and that he was going through alcohol withdrawal (¶36) He was to start a Diazepam taper, be assigned to a "low bunk" for safety and to be started on Keppra for seizure prophylaxis, but Dai did not order the medications administered immediately.(¶36)

Despite knowing he was experiencing life-threatening withdrawal, Defendants Mata, Castleberry, Dai and Does 1-30 did not hospitalize him, did not ensure he received withdrawal medications, and housed him unsafely without adequate monitoring. (¶ 38) They failed to ensure he received a low bunk despite his seizure risk (¶ 38)  Approximately 3 ½ hours after his admission to VDF and

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

after receiving no anti-seizure medications or adequate supervision nor appropriate housing, Mr. Conejo was found on the floor of his cell at 1:30 am on March 29, 2024 with severe head injuries, including a skull fracture. (¶¶ 39-40; 47; 49) VDF employees reported to Mr. Conejo's ER physicians that his mechanism of injury was rolling off a bench, however, Mr. Conejo's doctors at the hospital deemed the magnitude of his injuries as incompatible with a simple fall from a bench. (¶41)The head injuries were either the result of falling from a top bunk or physical injuries from interactions with other inmates.  (¶38) Mr. Conejo died from his injuries on April 12, 2024(¶42) Plaintiffs also alleged causation and damages. (¶¶ 53–57).

## III.    Legal Standard

Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Fed. R. Civ. P. 12(b)(6). The test is whether the complaint alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, at 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading alternative theories of liability is permissible. Fed. R. Civ. P. 8(d)(2).  All reasonable inferences from the facts alleged should be drawn in plaintiff's favor.  *Barker v. Riverside County Office of Educ.* 584 F.3d 821, 824 (9th Cir. 2009).  If any claim is dismissed, leave to amend should be granted if it appears at all possible that plaintiff can correct the defect." *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 701 (9th Cir. 1990).

## IV.    The SAC Provides Sufficient Notice to All Defendants

Naphcare argues at section V of its motion that Plaintiffs' SAC does not provide adequate notice.  The contention lacks merit.  All Defendants do not give full credit to the allegations in the SAC and the reasonable inferences the Court must draw in Plaintiffs' favor.  The SAC provides fair notice to all defendants that their actions in being deliberately indifferent to Mr. Conejo's serious medical

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO
COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

needs have consequences. Dai's conduct is clearly identified at (¶¶36, 47-56) and her duties alleged at (¶10). Defendants were acting within the course and scope of their employment. (¶25). Similar specific conduct by County nurses Mata and Castleberry are contained at (¶¶8-9, 32-34, 37-38, 47, 45-58). Additionally, dismissal of Doe defendants is premature. See *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (district court erred in dismissing complaint against Doe defendant simply because plaintiff "was not aware of Doe's identity at the time he filed his complaint."). Plaintiffs have differentiated between the Doe defendants by, for example, identifying those that are supervisors of medical staff; those responsible for training, etc. (see ¶¶16-21) Does 1-30 are jail or medical personnel who ignored obvious symptoms of serious illness. (See ¶¶22, 45-58).

## V.    Standing: The Survival Claim is Separate Property

County argues at Section IV.A. of its motion that Plaintiffs lack standing. Not so. County admits that "multiple heirs may jointly qualify as successors in interest". [Dkt. 32-1 at page 6, line 14]. CCP § 377.10(b) defines the beneficiary of an intestate decedent's estate to include "…the sole person *or all of the persons who succeed to a cause of action*…" (Emphasis added.) Here, Plaintiff Fabian Garcia as Successor-in-Interest to the Estate of Conejo ("Garcia") filed the declaration required under CCP § 377.32. (¶4, Ex. 1 to Garcia/Ramirez SAC). Under California Family Code § 781(a)(2) money received or to be received by a married person in satisfaction of a judgment (or settlement) for damages for personal injuries is the separate property of the injured person if the cause of action for the damages arose while the injured spouse is living separate from the other spouse. Garcia/Ramirez's SAC alleged that Benitez and Decedent were separated since at least October 2022 and were living separately at the time Decedent sustained the injuries (¶4). Mr. Conejo died without a will (intestate) (¶5). The intestate share of the surviving spouse is only *one-half* of the intestate estate where the decedent leaves only one child. Cal. Prob. Code§ 640l(c)(2)(A)(emphasis

added). Garcia/Ramirez alleged that Garcia is Decedent's only child.  (¶4) Under Probate Code § 6402(a), the part of the intestate estate not passing to the spouse under Section 6401 passes to the issue of the decedent (where issue exist – as here). Thus, Garcia has standing.  Even assuming that Benitez's Complaint/Declaration indicates she is the "sole" successor, then such factual disputes are better left for the summary judgment stage.  (See, i.e, *Campos v. Cty. of Los Angeles*, 2012 U.S. Dist. LEXIS 120743, 2012 WL 3656518 at *1-*3 (C.D. Cal. Aug. 23, 2012),(holding that both plaintiffs could be successors in interest if the decedent's Section 1983 claim was characterized as separate property).

## VI.  Deliberate Indifference is Adequately Alleged Against All Defendants

Contrary to Section IV.B of County's motion, and section VI.C of Naphcare's motion, Garcia/Ramirez have adequately alleged a deliberate indifference to medical needs claim at SAC 1st Claim (¶¶45–58).  The Due Process Clause of the Fourteenth Amendment guarantees that pretrial detainees receive constitutionally adequate medical and mental health care. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018). Claims for violations of the right to adequate medical care brought by pretrial detainees must be evaluated under the objective deliberate indifference standard. *Id.* at 1124-25.  Naphcare Defendants ask this court to <u>ignore</u> specific allegations related to their employee Dai's conduct and instead infer (in their favor) that only some of the acts/omissions are attributable to Dai/Does 1-30 despite plaintiffs alleging otherwise.   That is improper. Contrary to Naphcare's assertion of implausibility, it is common for multiple medical providers to share the same knowledge of a patient's condition because reasonable medical providers have access to, and review, the patient's medical chart/records. In any event, aside from the allegations common to the three named medical providers(Dai, Mata, Castleberry)/Does 1-30 which were alleged at (¶¶45-58) Plaintiffs have also alleged separate facts pertaining to Dai (¶¶10, 36), Does 1-30 (¶¶16, 18, 21-22), Mata (¶¶8, 33) and Castleberry (¶¶9, 37). Plaintiffs

also alleged specific acts as to Supervisory Does 1-4 and 5-9 in their 3rd Claim (¶¶68-85) and 4th Claim (¶¶86-98) regarding failing to train/supervise on matters relating to: dealing with inmates in medical distress; communicating medical information; withdrawal treatment; NCCHC standards; jail policies; and seizure treatment. Naphcare Defendants waived by not asserting any challenge to the supervisory claims (3rd and 4th ).

Next, Naphcare Defendants incredulously argue that the serious medical need at issue is not clear. The SAC identifies alcohol withdrawal and seizures as the serious medical needs. (¶¶47-48) Alcohol withdrawal is a serious medical need. See, *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). A seizure disorder is also a serious medical condition *Arellano v. Sedighi*, 2020 U.S. Dist. LEXIS 182939, *78 (S.D. Cal. Oct. 1, 2020). All defendants ignore most of Plaintiffs' allegations in an attempt to minimize and mischaracterize Mata, Castleberry and Dai's acts/omissions. Mata did not merely perform an intake screening and allow the booking process to continue; Castleberry did not merely fail to complete a medication-refusal form and Dai did not merely order Mr. Conejo a Diazepam taper and recommend a low bunk. Plaintiffs have alleged much more than that. The specific facts are set forth in detail in the Statement of Facts above and can be found primarily at (¶¶33-34, 36-38, 45-58). In short, Plaintiffs alleged Mr. Conejo had serious symptoms of withdrawal (i.e., vomiting, disorientation, tremors, slurred speech, unsteady gait, seizures), that Mata, Castleberry, Dai and Does 1-30 knew of and that such defendants knew Mr. Conejo needed to be referred to the ER immediately, given anti-seizure and withdrawal medications, that he required a low bunk for his safety and close medical monitoring. None of the defendants took action to ensure he received those things and worse yet, they did not communicate his need for a low bunk. They knew his condition was serious and life-threatening but didn't follow NCCHC standards, or jail policy M.9 to have Mr. Conejo immediately referred to the ER (¶35a). County

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL); 25-CV-01823-TWR (DDL)

Defendants' reliance on policy E.2.1 is beyond the four corners of the pleadings and thus, an improper fact for this court to consider in ruling on a FRCP §12(b)(6) motion. Regardless, E.2.1 expressly relies upon Cal. Code Regs. Tit. 15, § 1207 which provides in pertinent part that a screening shall be completed on all persons at the time of intake and that the "…screening shall be performed by licensed health personnel or trained facility staff, with documentation of staff training regarding site specific forms with appropriate disposition <u>based on responses to questions and observations made at the time of screening</u>." (Emphasis added).

A jury could reasonably find that by not accurately recording observed symptoms during the screening on the specified forms, not only did County Defendants fail to complete the screening, but they actively interfered with the screening process and "appropriate disposition" thereby exposing Mr. Conejo to injury. The whole point of a screening process is to identify medical issues so that inmates like Mr. Conejo, are afforded appropriate evaluation, treatment and monitoring. A jury could reasonably find that <u>no medical monitoring</u> was performed after his initial intake, despite knowing that he was going through alcohol withdrawal and that he had not taken anti-seizure medications. His vitals were recorded only twice, once at 10:19 p.m. on 3/28/24 and the second time at 2:16 a.m. on 3/29/24 -which was *after* he had already been taken to Palomar Hospital at 2:11 a.m.. (SAC ¶34 and footnote 1) It has long been held that "a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." *Sandoval v. County of San Diego*, 985 F.3d 657, 679–80 (9th Cir. 2021) (*discussing Jett v. Penner*, 439 F.3d 1091, 1097–98 (9th Cir. 2006). Deliberate indifference may be shown when "prison officials deny, delay or intentionally interfere with medical treatment[.]" *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). *Sandoval* held that pretrial detainees like Mr. Conejo only needed to show "that the defendant's actions

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO
COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

were 'objectively unreasonable.' *Id.* at 669. In *Sandoval*, Nurse de Guzman was told that Mr. Sandoval was sweating, tired and disoriented, but de Guzman cleared Mr. Sandoval for booking and did nothing to monitor him. *Sandoval* held that a jury could conclude that "a reasonable nurse would have understood that Sandoval faced a 'substantial risk of suffering serious harm.'" *Id.* at 670.

Here, a jury could find that as a result of Mata, Castleberry and Dai's disregard of Mr. Conejo's obvious symptoms and failure to provide treatment/supervision, that they were deliberately indifferent to Mr. Conejo's safety and serious medical needs. Mr. Conejo was denied intervention he might otherwise would have received. Mr. Conejo's severe head injuries were the result of either falling from a top bunk or alternatively, physical injuries from interactions with other inmates, both of which would not have occurred if Mr. Conejo was sent to the ER or properly housed with close medical monitoring. (¶¶38). These paragraphs were incorporated by reference into Garcia/Ramirez's First claim at SAC ¶ 45. Defendants failed to take reasonably available measures to reduce the risk of injury to Mr. Conejo (¶52(c)), and by doing so, caused harm.(¶52(d)). The intentional decisions regarding conditions of confinement that Naphcare Defendants claim were not alleged are clearly set forth at (¶¶51-52(a)) By not administering necessary alcohol withdrawal medications like Keppra and Diazepam immediately (Dai), any reasonable nurse would know that Mr. Conejo's symptoms would worsen. Mata, Castleberry, Dai and Does 1-30's acts/omissions actively prevented others from providing care to Mr. Conejo because it signaled to others that he was fit to book – obscuring the true nature of his condition.[1]

---

[1] Mata is presently a named defendant in *The Estate of Roselee Bartolacci v. County of San Diego, et al*. Case No.: 24-cv-01156-WQH-JLB on a claim of deliberate indifference to medical needs relating to ignoring obvious signs of Roselee Bartolacci's medical condition and needs during intake screening. Ms. Bartolacci died in a San Diego County jail on May 28, 2023. Plaintiffs request the Court take judicial notice of this pursuant to Fed. R. Evid. §201.

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO
COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

Defendants interpret facts in their favor which is improper on a motion to dismiss. County argues that Mata and Castleberry made a "decision" to pursue "one reasonable course of treatment over another" – yet, it is a question of fact for the jury to decide whether their conduct in ignoring withdrawal symptoms constitutes a "course of treatment" or whether such conduct is "reasonable". Naphcare Defendants suggest they are not involved with or responsible for housing assignments, yet, they admit in their motion at pg. 14, footnote 2 that Dai ordered a low bunk housing assignment for Mr. Conejo's "safety". Clearly, failing to communicate that need to jail staff, which plaintiffs alleged at (¶50) has a direct causal link to Mr. Conejo faling from a top bunk (¶38) and sustaining massive head injuries (¶¶40-41, 56). Defendants' motions should be denied.

## VII. Familial Association is Adequately Alleged Against All Defendants

"The substantive due process right to family integrity or to familial association is well established." *Rosenbaum v. Washoe Cnty.,* 663 F.3d 1071, 1079 (9th Cir.2011). The "shocks the conscience" standard in the context of pretrial detainee deaths can be met by a showing of deliberate indifference, "so long as prison officials had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). Indifference can be truly shocking where "extended opportunities to do better are teamed with protracted failure to even care." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). Depending on the circumstances confronting the government official, the shocks the conscience standard for violation of the right to familial association can be met either by the "purpose to harm" standard or the "deliberate indifference" standard. Naphcare argues that plaintiffs must show "purpose to harm". That is not the law. If government officials confront "fast paced circumstances presenting competing public safety obligations" they are entitled to the "purpose to harm" standard. *Rosales v. Cnty. of San Diego*, 511 F. Supp. 3d 1070, 1087 (S.D. Cal. 2021).

Otherwise, the deliberate indifference standard applies. Here, defendants had time to deliberate so the "deliberate indifference" standard applies, not purpose to harm.

Garcia/Ramirez' Familial Association Claim is the 2nd Cause of Action (¶¶59-67). Both County's motion at section IV.C and Naphcare's motion at section VI.F challenges Plaintiffs' Loss of Familial Association Claims on grounds that the conduct at issue does not shock the conscience/that the underlying constitutional violation of deliberate indifference to medical needs was not sufficiently alleged. Both arguments lack merit. Plaintiffs alleged that Mr. Conejo was deprived of his rights to be free from denial/delay of medical care. (¶60). The claim incorporates prior paragraphs by reference. (¶59, 61). As set forth above, Plaintiffs have adequately stated a claim for deliberate indifference (¶¶45-58), therefore, the derivative familial association claim at (¶¶59-67) is also adequately stated. Next, Naphare argues that Naphcare Defendants' personal participation was not alleged. No so. Garcia/Ramirez alleged conduct common to all three medical providers at (¶¶45-58) which specifically included Dai/Does1-30 and was incorporated by reference in the Familial Association claim at (¶¶59, 61). Further, separate facts pertaining only to Dai are also alleged at (¶¶10, 36) and to Does1-30 at (¶¶16, 18, 21-22). Thus, personal participation was alleged.

Plaintiffs also alleged sufficient facts to establish that Mata, Castleberry, Dai and Does 1-30 had time to deliberate and that they acted in reckless disregard to Mr. Conejo's safety. Here, plaintiffs alleged such defendants made intentional decisions regarding Mr. Conejo's conditions of confinement including not immediately summoning medical care (paramedics) to transport Mr. Conejo to the hospital; not administering alcohol withdrawal medications immediately, even if involuntarily; not properly communicating or providing close medical monitoring of Mr. Conejo's condition (SAC ¶ 52(a)). Said defendants had time to deliberate because Plaintiffs alleged that Mr. Conejo entered VDF on March 28, 2024 at 9:57 p.m.. (Dkt 15 - SAC at pg 1, ln 9) and that his vitals were only recorded two times

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

– once at 10:19 p.m. on 3/28/24 and the second time at 2:16 a.m. on 3/29/24. (¶34) Since Mr. Conejo was in the jail for several hours, this was not a situation where defendants were confronted with fast-paced circumstances. See, i.e, *Cnty. of Sacramento v. Lewis, supra* at 851. They had time to deliberate over whether to comply with jail policy and NCCHC standards to refer Mr. Conejo to the ER.  Mr. Conejo's severe head trauma wasn't discovered until approximately 1:30 a.m. on 3/29/24. (¶39)  At the hospital, Mr. Conejo's doctors diagnosed him with multiple head fractures and bilateral subdural hemorrhages (¶40) Mr. Conejo's hospital providers opined that he had a skull fracture out of proportion to the described mechanism of trauma (rolling off a bench). (¶¶38;41)

There was no legitimate penological interest in staff: failing to communicate critical medical information; denying/delaying access to medical care; observing tremors, alcohol withdrawal and seizures and doing nothing; and refusing to place Mr. Conejo in appropriate housing with close monitoring. (¶62-64) Mr. Conejo's serious medical condition was ignored which was the proximate cause of him sustaining severe head injuries and Plaintiff's loss of Mr. Conejo's society and companionship. (¶¶ 55-56; 66-67). Naphcare argues that there are no facts showing NaphCare Defendants "knew" that Mr. Conejo was vomiting, had tremors, slurred speech, etc..  However, Dai's assessment was that Mr. Conejo was going through alcohol withdrawal (¶36). Clearly Mr. Conejo's symptoms led to that conclusion. County nurse Mata had noted tremors, nausea, vomiting, slurred speech and disorientation on a separate CIWA form (¶33).  It is reasonable to infer that Dai had access to Mata's CIWA form as part of Mr. Conejo's electronic medical record. Further Dai was supposed to be trained in the NCCHC standards which required Mr. Conejo's immediate transfer to the hospital. ( ¶¶11-12). Thus defendants' motion regarding the familial association claim should be denied.

**VIII. 3rd and 4th Supervisor Liability Claims Are Adequately Alleged**

County argues at section IV.D that Plaintiffs 3rd and 4th Supervisory Claims

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

should be dismissed.  The contention lacks merit. Naphcare Defendants didn't seek dismissal of these claims despite Garcia/Ramirez alleging that Supervisory Does 1-4 and 5-9 supervised medical staff (like Dai) employed by Contractor (here, contractor includes the Naphcare entities (¶¶11-12, 16, 69, 87) and have therefore waived any argument to dismiss them. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "A plaintiff's allegations that the actions or inactions of the person 'answerable for the prisoner's safe-keeping' caused their injuries are therefore sufficient to state a claim of supervisory liability for deliberate indifference." *Frary v. County of Marin*, 2012 U.S. Dist. LEXIS 177517, at *23 (N.D. Cal. Dec. 13, 2012) (*citing Starr*, 652 F.3d at 1208) (denying motion to dismiss where plaintiffs alleged that sheriff failed to properly train, assign, supervise, and guide staff and medical personnel to take necessary measures to ensure inmates' health and safety, and that sheriff failed to properly supervise jail medical services).

Here, Plaintiffs have alleged an underlying constitutional violation (deliberate indifference to medical needs (¶¶45-58)).  Next, Plaintiffs alleged the requisite causal connection.  The 3rd Claim (¶¶68-85) relates to Supervisory Does 1-4 who  supervised the medical staff at VDF (¶16)  As to these defendants, Garcia/Ramirez alleged that they failed to properly train their subordinates on: dealing with inmates in medical distress; communicating critical medical information; treatment of withdrawals/seizures; NCCHC Standards; and supervisors' duty to ensure all employees were properly trained to meet the needs of their patients. (¶¶69-73).  Plaintiffs alleged that due to their failure to train, Mr. Conejo's condition wasn't treated or monitored (¶74); that Supervisor Does 1-4 knew that failing to monitor a patient going through withdrawal could be fatal

(¶77) but that Does 1-4 failed to train on the necessary care of inmates suffering from withdrawal (¶80); that the failure to train/supervise was done with deliberate indifference to Mr. Conejo's rights (¶83) and that as a direct result of failing to train/supervise Mr. Conejo suffered unconstitutional treatment(¶85).

Garcia/Ramirez's 4th Claim (¶¶86-98) relates to Doe Supervisors 5-9 who are supervisory employees/agents of the County responsible for training jail staff on assigning appropriate housing/performing cell safety checks. (¶17) Does 5-9 failed to properly train and supervise defendants Mata, Castleberry, Dai and Does 10-30 in the performance of their duties in evaluating ill patients; assigning appropriate housing for individuals in withdrawal; and/or performing required cell safety checks.(¶87) Such defendants knew that withdrawal symptoms without appropriate medication, housing and monitoring could be fatal and that there had been prior deaths in the County jails arising from such circumstances. (¶88) Plaintiffs alleged that by failing to properly train/supervise their subordinates with regard to communicating critical medical information, providing adequate care, housing assignments and monitoring of inmates, such subordinates thereby denied/delayed care to inmates like Mr. Conejo resulting in his death. (¶92-93) Also, that such failures to train/supervise endangered the lives of inmates like Mr. Conejo who was not immediately sent to the hospital; wasn't assigned housing where he could be closely monitored; and was placed improperly in a top bunk or sustained physical injuries from inmates while he was in a vulnerable state which led to his death. (¶93) Plaintiffs alleged that the failure to train and supervise was the moving force behind the misconduct of Defendants Mata, Castleberry, Dai and Does 10-30. (¶98) Accordingly, Plaintiffs have adequately alleged the 3rd and 4th Causes of Action and County's motion to dismiss those claims should be denied.

## IX.  Plaintiff's Monell Claims Are Sufficiently Alleged

County challenges Garcia/Ramirez's *Monell* claim (¶¶99-123) at Section IV.E of their motion and Naphcare does the same at Section VI.G of their motion.

Contrary to Defendants' arguments, Garcia/Ramirez did adequately allege a violation of familial association (¶¶59-67) as discussed above. Garcia/Ramirez incorporated all prior paragraphs of the SAC in the 5th (*Monell*) Claim at ¶99, and also included herself among those plaintiffs that were injured in ¶119 ("…Defendants' policies, customs, or practices… were so closely related to Mr. Conejo's deprivation of rights that they were the moving force causing Mr. Conejo's injuries and death, **as well as Plaintiffs' economic and non-economic damages**." (Emphasis added) As such, County's argument that Ramirez lacks standing to bring a *Monell*-based claim is wholly without merit.    Next, County misstates the law regarding *Monell* claims when it argues that *Monell* liability cannot exist without an underlying constitutional violation against an individual defendant (Dkt. 32-1 at page 16, lns. 1-4).  Not so.  Constitutional violations by employees are *not* a prerequisite to a *Monell* claim in the Ninth Circuit. If a plaintiff established he suffered a constitutional injury by the County, "the fact that individual officers are exonerated is immaterial to liability under § 1983." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 n.12 (9th Cir. 2016).

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), the Court held that municipalities may be sued for monetary, declaratory, or injunctive relief where official policy or custom violates a Constitutional right. *Id*. The municipal "custom" may not be formally approved or written, but may reflect "persistent and widespread discriminatory practices of state officials" that are "so permanent and well-settled as to constitute a "custom or usage" with the force of law.'" *Id*. Policies can include failure to train municipal employees on avoiding certain obvious constitutional violations. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  Plaintiffs allege numerous pervasive and widespread customs and practices against both defendants as well as failure to train. For example:  not properly screening inmates for medical care or treatment; failing to communicate the medical needs of

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO
COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

inmates; not properly checking on the welfare of inmates; failing to conduct proper cell checks; and not properly investigating misconduct of deputies and medical staff. (¶¶105-109) Plaintiffs alleged County and Naphcare entities' failure to train deputies and medical staff on treatment of inmates in medical distress gives inference of a municipal custom that authorized or condoned deputy and/or medical staff misconduct(¶103) and that the practice or custom of County and Naphcare entities was to deny treatment to inmates in serious medical distress and place inmates in inappropriate housing for their needs (¶104).

Naphcare argues that Plaintiffs have failed to identify a Naphcare policy for purposes of the *Monell* claims or a causal link to Decedent's death. Not so. First, Plaintiffs alleged: that Naphcare, Inc. and Naphcare San Diego, LLC were third-party contractors who employed, supervised, and trained medical staff at VDF. (¶¶11-12); that County's contract with the Naphcare entities required their employees to be trained in NCCHC standards (¶¶11-12); that prior to Mr. Conejo's incident, the Naphcare entities were aware of other failures to render emergent medical care to seriously ill inmates in San Diego County jails. (¶43) All defendants knew of multiple cases (*Serna, Greer, Sisson, Marroquin De Portillo, Dunsmore, Victorianne,* and *Rainey*) spanning a period of ten (10) years from 2011 – 2021 (¶¶43(a) – (i)) wherein inmates housed in San Diego County jails died as a result of a combination of inadequate medical treatment for emergency medical issues, inadequate housing for medical needs and/or inadequate safety checks/monitoring. Plaintiffs alleged that County and Naphcare's customs/practices resulted in denying medical care to Mr. Conejo and caused his death (¶119) and that such policies and practices were the moving force causing Mr. Conejo's injuries and death and Plaintiffs' damages (¶119) Additional allegations supporting the *Monell* claim are set forth at (¶¶99-123 and 43)

One custom/practice at issue in the *Monell* claim is the failure of County employees to render emergent medical care to seriously ill inmates housed in San

17

Diego County jails resulting in their deaths.  It is inconsequential whether such inadequate medical care stemmed from medical emergencies caused by alcohol withdrawal or some other precipitating factor.  The point is that defendants have long been aware of the need to provide adequate medical care to seriously ill inmates in custody and yet, has repeatedly failed in that regard with devastating consequences.  County and Naphcare also ignore these facts:  County has a high rate of deaths in its jails (¶43(h)); that a 2022 State auditor's review of in-custody deaths found that deficiencies were related to the provision of medical care and performance of visual checks (¶43(i)).  The auditor found that some of the deaths involved inmates with serious medical needs which were not identified upon intake and that identifying health needs at intake is critical to ensuring inmates' safety in custody. (¶43(i)).  Here, deficiencies in Mr. Conejo's intake process similarly resulted in him not receiving adequate medical care (seizure medicine) and being placed in a cell without proper medical monitoring exposing him to serious harm.

As to Naphcare's patterns of unconstitutional policies/customs/practices Naphcare's own motion identified a case in which Naphcare, Inc. is named as a defendant relating to the September 2023 death of Keith Bach in a San Diego County jail on claims related to deliberate indifference to medical needs (diabetic condition – not providing insulin medication) in which the medical examiner classified Mr. Bach's death a homicide. *Estate of Keith Bach v. County of San Diego*, *et. al*, Case No. 3:24-cv-01687 – referenced in Naphcare's motion Dkt. 38, footnote 4. Additionally, County of San Diego recently sued Naphcare, Inc., and Naphcare San Diego, LLC related to the jail death case involving Brandon Yates in January 2024 where the underlying lawsuit asserts deliberate indifference to medical needs among other claims[2].

---

[2] https://www.sandiegouniontribune.com/2025/09/27/in-rare-move-san-diego-county-sues-its-own-jail-healthcare-providers-over-brutal-cellmate-killing/; See also, *Estate of Brandon Yates v. County of San Diego*, *et al*, Case No: 25-cv-0410-W-MMP, Dkt. 20 filed 9/18/2025 in the Southern District of California.

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

These prior incidents demonstrate that defendants had actual knowledge of systemic deficiencies in jail medical care, intake screening, housing placement, seizure and withdrawal protocols, and cell safety checks, but failed to correct them. Plaintiffs alleged that these policies were longstanding and systemic, and were the "moving force" behind the violation of Mr. Conejo's Fourteenth Amendment rights and his resulting death. (¶¶ 100, 111, 119) Plaintiffs describe that the County had a custom of allowing deputies and medical staff to delay or deny medical care to inmates, and that it was so pervasive that it constituted an unofficial policy. (¶¶ 100–104) Despite their awareness of a high rate of inmate deaths due to denial of adequate medical care, County took no steps to abate the risk. Additionally, in some circumstances a *policy* of inaction, such as a policy of failing to properly train employees, may form the basis for municipal liability. *Hunter v. County of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011)(emphasis in original). Plaintiffs alleged a failure to train deputies and medical staff (¶¶103, 112, 114) on treatment of inmates in medical distress, which gives rise to an inference of a custom that authorized/condoned deputy and/or medical staff misconduct. (¶103)Accordingly, defendants' motions to dismiss should be denied.

**X.    § 844.6 Immunity Doesn't Apply to Plaintiffs' State Law Claims**

County concedes that Plaintiffs' three state law-based claims (6th – Wrongful Death ¶¶124-134); (7th – Negligence/Medical Negligence ¶¶135-153); (8th – Bane Act ¶¶154-164) are adequately alleged as against the individual County defendants Mata, Castleberry and Does 1-30 as County makes no argument for dismissal as against those defendants on grounds of immunity. Instead, County argues at Section IV.G that under Govt Code. § 844.6 the *County* is immune for injuries to prisoners.  The individual County employees remain liable under Section 844.6(d) which provides in pertinent part:"[n]othing in this section

Footnote 2 continued:  Plaintiffs request the Court take judicial notice of these matters pursuant to Fed. R. Evid. §201.

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

exonerates a *public employee* from liability for injury proximately caused by his negligent or wrongful act or omission." *Id.* § 844.6(d) (emphasis added). However, County's arguments seeking dismissal of Plaintiffs 6th thru 8th claims as against *County* fail because under Government Code § 845.6, both the employee and entity can be liable if the employee (while acting in the course of employment) knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Garcia/Ramirez adequately alleged facts supporting this exception at (¶128 -6th Cause of Action); (¶141 – 7[th] Cause of Action) and that defendants violated Mr. Conejo's right to emergency medical care as required by §845.6 at (¶156e – 8[th] Cause of Action). Additionally, Plaintiffs alleged Govt. Code § 815.2 respondeat superior liability. (¶¶ 133 and 146-147) Thus, County's motion to dismiss Plaintiffs' state law claims (6[th], 7[th], 8th, ) on §844.6 immunity grounds should be denied.

## XI.    The Wrongful Death Claims Are Not "Split" & Are Properly Pled

The one action rule was satisfied – Garcia/Ramirez brought all heirs (and purported heirs) in the lawsuit they filed by naming Benitez/Quintero "nominal defendants". Now that this Court has consolidated the two actions, there is no danger of *successive* lawsuits brought by omitted heirs and thus, County has no basis to argue the claim is being "split". County fails to articulate how a consolidated action can lead to successive wrongful death lawsuit against it.

## XII.   §377.60 – Wrongful Death Claim is Adequately Alleged

First, Naphcare Defendants misstate the facts alleged in the pleadings. Plaintiffs are not alleging that Mr. Conejo rolled off a bench. Plaintiffs alleged that jail staff said Mr. Conejo rolled off a bench (¶41) and that hospital doctors opined that the magnitude of the injuries are not consistent with a purported roll off a bench (¶41). Next, Naphcare Defendants construe Plaintiffs' CCP §377.60 wrongful death claim too narrowly as being purely predicated on Govt. Code §845.6. Not so. Naphcare admits it is a private company, so it is not necessary for

20

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL);  25-CV-01823-TWR (DDL)

Plaintiffs to fit the wrongful death claim within the §845.6 exception. Plaintiffs alleged "all California state law claims as a basis for state law wrongful death cause of action and incorporate later torts by reference" (¶125). Garcia/Ramirez then alleged state law claims for Negligence (7th Claim ¶¶135-153) and Bane Act (8th Claim ¶¶154-164). Even if this Court determines Naphcare is public, Plaintiffs alleged the §845.6 exception based on failure to summon medical care. As set forth below, since Plaintiffs have properly alleged negligence/medical negligence and Bane Act claims, so too have they properly asserted their wrongful death claim.

Plaintiffs' Negligence claim alleges the requisite elements. Indeed – the fact that County Defendants Mata and Castleberry did not challenge the 7th claim on this ground is evidence that all requisite elements were adequately alleged. As to the elements of duty and breach – Garcia/Ramirez identified general (¶136) and specific duties Naphcare Defendants failed to perform: documenting/communicating Mr. Conejo's serious medical conditions; examining, diagnosing, treating, and managing Mr. Conejo's care; failing to use that degree of skill and care ordinarily used by healthcare professionals engaged in the practice of their profession (¶137); failed to provide proper housing where Mr. Conejo could be monitored (¶138); failed to monitor (¶139) failed to place Mr. Conejo in proper housing and a low bunk (¶140) delayed and failed to summon medical care (¶141); as well as failures in supervision by Supervisory Does (¶¶129-130; 142-143). As to the elements of causation and damages, Plaintiffs also alleged these in each of their State Law Claims: (¶126-127; 129-132; 134; 137; 150-153; 164) Further, Dai's personal participation was alleged at (¶¶36; 45-58; 139-141).

Under Plaintiffs' negligence and Bane Act claims, the Naphcare entities are vicariously liable for their employee Dai's violations of Mr. Conejo's rights. (See i.e., *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 897 (N.D. Cal. 2013) (a prison health services contractor can be vicariously liable under a respondeat superior theory for the Bane Act violations of its employees). Plaintiffs alleged respondeat

21

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL); 25-CV-01823-TWR (DDL)

superior liability (¶¶146;162). Thus, as Plaintiffs incorporated the later torts of negligence and Bane Act into their CCP§377.60 Wrongful Death claim, Plaintiffs have adequately alleged the wrongful death claim against Naphcare Defendants.

### XIII. Medical Negligence & Negligence Are Adequately Stated

Naphcare Defendants argue that Plaintiffs' Negligence and Medical Negligence claims "conflate" defendants' conduct and don't identify specific acts by Dai.  The contention lacks merit. First, Garcia/Ramirez's Negligence claim includes both negligence and medical negligence (¶¶135-153) and is brought against *all defendants* as noted in the heading for the cause of action. Thus – it is not necessary for Plaintiffs to separately identify each named defendant.  Second, the claim contains standard paragraphs incorporating by reference all prior paragraphs. Specific acts of Dai and Naphcare Defendants are alleged in prior paragraphs for example: Dai assessed Mr. Conejo with alcohol withdrawal and her plan was to start him on medications, including Keppra to prevent seizures as well as assign him a low bunk for safety (¶36) She knew that he was in withdrawal and that he required immediate ER treatment, but failed to send him. (¶36) She knew he needed the medications immediately, even if involuntarily, but did not order them administered in that manner.( ¶36).  She knew that if he wasn't going to the ER that he must have specialized housing for close medical monitoring but didn't order it for him. (¶36). Additional conduct is alleged at (¶¶45-58; 139-141).

Contrary to Naphcare Defendants' assertion, Plaintiffs alleged the requisite medical negligence standard of care and breach of same (¶137).  Naphcare argues that Plaintiffs have not alleged how a medical provider like Naphcare would be responsible for housing and monitoring of Mr. Conejo.  This is incorrect. Dai is the Naphcare entities' employee and her acts/omissions are imputed to her employer under respondeat superior which was alleged at (¶146).  Moreover, Naphcare Defendants admit in their briefing that Dai ordered a low bunk housing assignment for Mr. Conejo's "safety".  Thus, Dai has responsibilities related to

housing assignments and under NCCHC standards which she must follow, duties related to constant monitoring of individuals with progressively worsening withdrawal symptoms (¶35). Dai's failure to communicate the need for a low bunk to jail staff, which plaintiffs alleged at (¶50), has a direct causal link to Mr. Conejo falling from a top bunk (¶38) and sustaining massive head injuries (¶¶40-41, 56). Thus, all elements of negligence/medical negligence were sufficiently stated.

## XIV. The Bane Act Claim is Adequately Alleged as Against All Defendants

Defendants seek dismissal of Garcia/Ramirez's Bane Act Claim (¶¶154-164) on grounds that the SAC fails to allege *separate* threats, intimidation, or coercion distinct from the allegations of denial of medical care. This misstates the law. Several district courts have concluded that an allegation of a defendant's deliberate indifference to a plaintiff's serious medical needs suffices to state a claim under the Bane Act because of the coercion, or specific intent, inherent in the deliberate indifference standard. *Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018); *Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("[A] prison official's deliberate indifference to serious medical needs is a coercive act that rises above mere negligence."). *Greer v. Cnty. of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2021 U.S. Dist. LEXIS 29224, at *27 (S.D. Cal. Feb. 16, 2021). Deliberate indifference to medical needs was alleged. (¶¶45-58; 156-158).

Additionally, as set forth above, because Garcia/Ramirez have sufficiently alleged a claim for deliberate indifference against Mata, Castleberry and Dai, they have also stated a Bane Act claim against County and Naphcare Defendants. *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("And because California law permits respondeat superior liability for Bane Act violations, no defendant gets off the hook.") (first citing *Gant v. Cnty. of L.A.*, 772 F.3d 608, 623 (9th Cir. 2014); and then citing Cal. Gov. Code § 815.2(a)). Garcia/Ramirez alleged vicarious liability under Govt. Code §815.2 (¶163)

Naphcare argues Plaintiffs must show specific intent. The intent requirement is satisfied where the defendant allegedly acted with "[r]eckless disregard of the right at issue." *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, at 804 (2017).  Plaintiff alleged Defendants acted with reckless disregard. (¶58)

## XV.  Defendants are Not Entitled to Qualified Immunity ("QI")

Regarding whether Naphcare Defendants are state actors, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)). The test to determine whether QI applies is two-part. To defeat it, plaintiff must establish that (1) the conduct violated a constitutional right, and (2) the right was "clearly established" when the misconduct occurred. "Clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right" with careful consideration to the facts of the particular case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individuals in state custody have a constitutional right to adequate medical treatment. See *Estelle v. Gamble*, 429 U.S. 97, 104-05, (1976). This has long been the law. *Sandoval v. County of San Diego*, supra, 985 F.3d 657, 679-680 (9th Cir. 2021) is instructive.  There, the 9th Circuit rejected QI for the jail nurses where a nurse was told that a patient was sweating, disoriented, and in need of a more thorough look and the nurse only did a quick 10-second blood test. Id.

County does not argue that QI applies – only Naphcare does.  Dai knew Mr. Conejo was going through withdrawal and that he needed medications administered immediately but she did not order them to be provided in that manner and did not send him to the ER, nor did she order specialized housing with close medical monitoring for him.(¶36) Dai knew that Mr. Conejo was vomiting, disoriented, had tremors, in withdrawal, had slurred speech, unsteady gait and suffered from seizures.(¶47) These facts are similar to *Sandoval,* and therefore,

24

Dai/Naphcare are not entitled to QI. Based on Dai's deliberate indifference to Mr. Conejo's medical needs, Ramirez's liberty interest in her relationship with Mr. Conejo, was violated. (¶¶54, 59-61) The right to adequate medical treatment was clearly established at the time of the incident and Plaintiffs have sufficiently alleged a violation of that right.

## XVI. §845.6 (Failure to Summon Medical Care) as to Naphcare Defendants

Naphcare argues Plaintiffs did not allege that Naphcare can be liable under a statute (§845.6) limited to public entities. An employer is vicariously liable for the negligent acts of its employees if there is a "causal nexus to the employee's work." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal 4th 291, 297 (1995). Plaintiffs alleged such a nexus (¶¶ 10, 25) However, if this Court determines that Naphcare Defendants are solely <u>private</u> entities/persons not subject to liability under §845.6, as discussed above, that should <u>not</u> result in the dismissal of Plaintiffs' adequately alleged wrongful death, negligence/medical negligence and Bane Act claims which are predicated on duties/violations independent of §845.6.

## XVII.    Conclusion

For the reasons stated herein, Plaintiffs request that this Court deny all defendants' motions to dismiss. Should this Court be inclined to grant any portion of Defendants' motions, Plaintiffs respectfully request leave to amend the SAC.

Respectfully Submitted,                    Respectfully Submitted,

*/ s/ Maurizio Mangini*                    */s/ Suzanne Skolnick*
Attorney for Plaintiffs Estate of Conejo;   Attorney for Plaintiffs Estate of Conejo;
and Guadalupe Conejo Ramirez              and Guadalupe Conejo Ramirez
Dated: November 19, 2025                   Dated: November 19, 2025

PLAINTIFFS ESTATE OF CONEJO/RAMIREZ CONSOLIDATED OPPOSITIONS TO COUNTY AND NAPHCARE DEFENDANTS MOTIONS TO DISMISS SAC
25-CV-01143-TWR(DDL); 25-CV-01823-TWR (DDL)