1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | MARITZA BENITEZ, individually and as | Case Nos.:  25-CV-1143 TWR (DDL), |

MARITZA BENITEZ, individually and as
successor-in-interest to Decedent JOSE
RAMON CERVANTES CONEJO; and
JOSE ALBERTO QUINTERO,
individually and as successor-in-interest to
Decedent JOSE RAMON CERVANTES
CONEJO,

                                    Plaintiff,

v.

COUNTY OF SAN DIEGO; CITY OF
ESCONDIDO; JAMES ALBERGO;
PAUL MATA; DANA CASTLEBERRY;
NHI NGOC DAI; NAPHCARE, INC.;
NAPHCARE OF SAN DIEGO, LLC; and
DOES 1 through 50, inclusive,

                                    Defendants.

AND ALL RELATED CASES

Case Nos.:  25-CV-1143 TWR (DDL),
25-CV-1823 TWR (DDL)

**ORDER GRANTING IN PART AND
DENYING IN PART
(1) CITY DEFENDANTS' MOTION
TO DISMISS,
(2) COUNTY DEFENDANTS'
MOTION TO DISMISS, AND
(3) NAPHCARE DEFENDANTS'
MOTION TO DISMISS**

(25-CV-1143 ECF Nos. 29, 32, 38)

        Presently before the Court are three Motions to Dismiss: (1) Defendants County of San Diego, Paul Mata, and Dana Castleberry's Motion to Dismiss ("County MTD," ECF No. 32), (2) Defendants City of Escondido and Officer James Albergo's Motion to Dismiss ("City MTD," ECF No. 29), and (3) Defendants Nhi Ngoc Dai, Naphcare, Inc., and

1

Naphcare San Diego, LLC's Motion to Dismiss ("Naphcare MTD," ECF No. 38).  All three Motions are fully briefed.  (*See* ECF Nos. 45 ("B/Q Opp'n"), 43 ("R/G Opp'n"), 49 ("County Reply"), 48 ("City Reply"), and 54 ("Naphcare Reply").)  The Court held oral argument on the Motions to Dismiss on December 18, 2025.  (ECF No. 57).  Having carefully considered the Parties' arguments and the relevant law, the Court (1) **GRANTS IN PART AND DENIES IN PART** City Defendants' Motion to Dismiss, (2) **GRANTS IN PART AND DENIES IN PART** County Defendants' Motion to Dismiss, and (3) **GRANTS IN PART AND DENIES IN PART** Naphcare Defendants' Motion to Dismiss.

**BACKGROUND**

I.    **Factual Background[1]**

The two consolidated cases arise out of the arrest, detention, and subsequent death of Jose Ramon Cervantes Conejo ("Decedent").  The vast majority of the allegations concern Decedent's treatment at Vista Detention Facility ("VDF"), where he was brought after being arrested.  (*See* ECF No. 1 in No. 25-CV-1143 ("B/Q Compl.") ¶ 36.)[2]  Plaintiffs Benitez and Quintero allege wrongdoing by three groups: (1) City Defendants—the City of Escondido, Officer James Albergo, and Does 21 through 40, (2) County Defendants— the County of San Diego, Paul Mata, Dana Castleberry, and Does 1 through 20, and (3) Naphcare Defendants—Nhi Ngoc Dai, Naphcare, Inc., Naphcare San Diego, LLC, and Does 41 through 50.  (*See generally id*.)  Plaintiffs Garcia and Ramirez only allege wrongdoing by County Defendants and Naphcare Defendants.  (*See generally* ECF No. 15 in No. 25-CV-1823 ("R/G SAC").)

/ / /

---

[1]    For purposes of Defendants' Motions, the facts alleged in Plaintiffs' complaints are accepted as true.  *See Vasquez v. L.A. Cnty*., 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2]    The Factual Background primarily cites to the Benitez/Quintero Complaint (ECF No. 1 in 25-CV-1143) because it is the lead case, but the Court notes the relevant differences between the two complaints.

2

### A.    Plaintiffs Benitez and Quintero's Allegations Against City Defendants

On March 28, 2024, Defendant Albergo, an Escondido Police Department officer, arrested Decedent for being drunk in public. (*See* B/Q Compl. ¶ 33.)  Plaintiffs Benitez and Quintero allege Defendant Albergo used "excessive force" and "brutalized" Decedent while arresting him. (*Id*. ¶ 34.)  Plaintiffs Benitez and Quintero further allege Defendant Albergo was required to take Decedent to a "facility for a 72-hour treatment and evaluation of inebriates" under Cal. Penal Code § 647(f). (*Id*. ¶ 35.)  Instead, Defendant Albergo took Decedent to VDF. (*Id*. ¶ 36.)

### B.    Decedent's Condition When Arriving at VDF

When Decedent arrived at VDF, "he was not identified by medical staff as having any head injuries." (*Id*. ¶ 38.)  Decedent was "acutely intoxicated, disoriented, having hand and body tremors at rest, slurred speech, poor balance, nausea and vomiting." (*Id*. ¶ 39.)  Decedent was "willing but unable to sign a general informed consent" form. (*Id*.)

### C.    Defendant Mata's Actions

Upon arrival, Defendant Paul Mata, a registered nurse, gave Decedent an initial medical assessment. (*Id*. ¶ 40.)  Defendant Mata did not mark the following items on Decedent's Medical Clearance Assessment: that he was confused, had an altered mental status, was in withdrawal, had slurred speech, had unsteady gait, had a stupor, was tremulous, or was disoriented. (*See id*.)  He also did not mark that Decedent was experiencing tremors, shakes, nausea, or vomiting due to withdrawal on a Comprehensive Detox Screen Form. (*See id*.)  But Defendant Mata was aware Decedent "was experiencing tremors, nausea, vomiting, slurred speech and was disoriented because he had noted those symptoms on a CIWA form." (*Id*.)

Further, Defendant Mata marked on the Medical Clearance Assessment that Decedent did not have a disability requiring accommodation. (*Id*.)  Defendant Mata marked "no" on the Receiving Screening Form as the response to whether Decedent had a history or risk of alcohol withdrawal, despite noting that Decedent drank 12 beers two times per week and his most recent alcohol use was in the preceding five days. (*See id*.)

Defendant Mata also did not list Decedent's "prior history of seizures under neurological 'Chronic Conditions.'" (*Id.*)  Finally, Defendant Mata marked on the Medical Clearance Assessment that Decedent was "fit to continue" the booking process and did not mark that Decedent should be sent to a sobering cell or any other safety housing. (*Id.*)

### D.    Defendant Dai's Actions

Next, Defendant Dai, a Physician Assistant, assessed Decedent, and found that Decedent had recent or significant alcohol use, and that Decedent was experiencing withdrawal. (*Id.* ¶ 44.)  Defendant Dai's treatment plan included starting Diazepam on a taper for withdrawal, Keppra for seizure prevention, and recommending a low-bunk assignment. (*See id.*)  Defendant Dai did not order that Decedent be sent to the ER, that the medications should be administered immediately even if involuntary, nor that Decedent should be placed in special housing. (*See id.*)

Defendant Dai is employed by Naphcare. (*See id.*)  Naphcare is a "third-party contractor who employed, supervised, and trained medical staff at VDF." (*Id.* ¶ 15.)  Naphcare requires its employees to be "trained in and follow National Commission of Correctional Healthcare ('NCCHC') Standards in providing medical care to inmates housed at VDF." (*Id.* ¶ 14.)  "The NCCHC Standards require that individuals experiencing severe, life threatening intoxication or withdrawal must be transferred immediately to a licensed acute care facility and that individuals at risk for progression to more severe levels of intoxication or withdrawal are to be kept under constant observation by qualified health professionals or health-trained correctional staff." (*Id.*)

### E.    Defendant Castleberry's Actions

Plaintiffs allege Defendant Castleberry "knew or should have known that [Decedent] needed to take alcohol withdrawal medications immediately" and when Decedent refused Defendant Castleberry was "required to complete a medication refusal form" in its entirety and disclose what medications and why Decedent refused to take them. (*Id.* ¶ 45.)  Instead, Defendant Castleberry only completed "Refusal to Accept Medical Care/Treatment" forms

for Decedent's "refusal of a urine drug screen, covid test, covid vaccine and flu vaccine." (*Id.*)

### F.    Decedent's Head Trauma and Resulting Death

Sometime after Decedent was placed into housing at VDF, Plaintiff incurred severe head injuries, but it is unclear how they occurred. (*See id.* ¶ 47.) On March 29, 2024, Decedent was found on the floor of his cell with blood in his nostrils, his right eye swollen shut, and facial swelling. (*See id.* ¶ 48.) Decedent was transported to Palomar Medical Center in Escondido and admitted to the hospital. (*See id.*) At the hospital, Decedent "was diagnosed with severe head injuries, including a left frontal skull fracture, fracture of medial wall of right orbit, bifrontal subarachnoid hemorrhage, bilateral subdural hemorrhages involving frontal and parietal areas with bilateral hemorrhagic cerebral contusions, bilateral periorbital contusions, acute alcohol intoxication, alcohol withdrawal, and abnormal blood results." (*Id.* ¶ 49.) The Palomar Medical Center's trauma and neurosurgery team did not believe Decedent's injuries were compatible with a simple fall off a bed. (*See id.* ¶ 50.) Plaintiffs allege Decedent's head injuries could have occurred from "falling from a top bunk" or "interactions with other inmates." (*Id.* ¶ 47.) Decedent ultimately fell into a coma and passed away. (*See id.* ¶ 51.)

## II.    Procedural History

On May 5, 2025, Plaintiffs Maritza Benitez, individually and as successor in interest to Decedent Jose Ramon Cervantes Conejo; Jose Cervantes Conejo; and Jose Alberto Quintero, individually and as successor in interest to Decedent Jose Ramon Cervantes Conejo, filed a Complaint in this Court concerning the death of Jose Ramon Cervantes Conejo. (*See generally* ECF No. 1 in 25-CV-1143.) On March 28, 2025, Plaintiffs The Estate of Jose Ramon Cervantes Conejo by and through its successor in interest Guadalupe Conejo Ramirez and Guadalupe Conejo Ramirez filed a Complaint in San Diego Superior Court, also concerning the death of Jose Ramon Cervantes Conejo. (*See generally* ECF No. 1 in 25-CV-1823). The state action was then removed to the United States District Court for the Southern District of California on July 17, 2025, and designated as Case No.

25-CV-1823.  (*See id.*)  On September 2, 2025, the Court consolidated the two actions. (*See* ECF No. 27.)  Then, on September 16, 2025, in 25-CV-1823, Plaintiffs filed a Second Amended Complaint substituting Fabian Cervantes Garcia as the successor in interest for the Estate of Jose Ramon Cervantes Conejo.  (*See* ECF No. 15 in 25-CV-1823.) Defendants filed three separate Motions to Dismiss.  (*See* ECF Nos. 29, 32, 38 in No. 25-CV-1143.)

## LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," backed by sufficient facts that make the claim "plausible on its face."  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 566 U.S. at 678.  Rather, it demands enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In ruling on a 12(b)(6) motion, the court must accept as true "all factual allegations in the complaint" and "construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  This presumption does not extend to conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses a complaint for failure to state a claim, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

/ / /

/ / /

# ANALYSIS

## I.    Standing

Before turning to Defendant-specific arguments, the Court will address the standing issues brought by all three groups of Defendants.

### A.    *California Wrongful Death Standing*

Standing to sue for wrongful death is governed by California Code of Civil Procedure § 377.60.  Under Section 377.60, a cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons: "decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession."  *Id.* at 377.60(a).  Further, "[w]hether or not qualified under subdivision (a)" the following individuals can bring a cause of action if they were dependent on the decedent: "the putative spouse, children of the putative spouse, stepchildren, parents, or the legal guardians of the decedent if the parents are deceased."  *Id.* at 377.60(b)(1).  A "putative spouse" means "the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid."  *Id.* at 377.60(b)(2).[3]

### 1.    *Individuals Without Wrongful Death Standing*

County Defendants argue "[n]either the Decedent nor Plaintiff Q[uintero] has standing as a statutory heir to bring this action under California Code of Civil Procedure section 377.60."  (County MTD at 20.)  County Defendants are correct.  Under Section 377.60, neither a "family member" nor the estate itself have standing to bring a wrongful

---

[3]    Naphcare Defendants argue Plaintiff Benitez does not have standing because Decedent's death certificate states Decedent was divorced.  (*See* Naphcare MTD at 16.)  Plaintiffs Benitez and Quintero argue that Section 377.60 applies to putative spouses, (*see* B/Q Opp'n at 21), which is correct.  *See* Cal. Civ. Proc. Code § 377.60.  At the motion to dismiss stage, this is not a basis for dismissing Plaintiff Benitez from the wrongful death claim.

death claim.   The Court therefore **DISMISSES** the Decedent's Estate and Plaintiff Quintero from the wrongful death claim.

## 2.     *California's One Action Rule*

All Defendants argue that Plaintiffs violate the "one action" rule for California wrongful death lawsuits.[4]   Plaintiffs argue the Court's consolidation order cured any potential defect.  (*See* B/Q Opp'n at 22; R/G Opp'n at 20.)  "California law permits only one action for wrongful death."  *Cotta v. Robinson*, No. 1:13-CV-00359-LJO-SM, 2014 WL 4249144, at *4 (E.D. Cal. Aug. 27, 2014) (citing *Cross v. Pacific Gas & Elec. Co.*, 60 Cal.2d 690, 694 (1964)).  The purpose of the "one action" rule is to ensure there is only one verdict for one sum.  *See King v. Pac. Gas & Elec. Co.*, 82 Cal. App. 5th 440, 449–450 (2022).  The Court's Order Granting the Motion to Consolidate stated the cases would be consolidated "for all purposes"; thus, there would only be one trial and one verdict for one sum.  (ECF No. 27 at 2.)  Further, in the interest of judicial economy, the Court **ORDERS** Plaintiffs to file a consolidated complaint moving forward, *see infra* Section VI, therefore disposing of any "one action" rule concerns.  As a result, the Motions to Dismiss are **DENIED** to the extent they are based on the "one action" rule.

### B.     *California Survival Claims Standing*

Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate.  *See* Cal. Civ. P. Code § 377.20.  In California, a cause of action that survives the decedent "may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  *Id.*

---

[4]     County Defendants argue "[a]lthough the cases have now been consolidated, the consolidation order does not merge the pleadings or resolve the defects in Plaintiffs' wrongful death claims."  (County MTD at 20.)  City Defendants make a similar argument that Plaintiffs "must join together in one action and name all other known heirs as nominal defendants."  (City MTD at 17 (citing *Smith v. Premier All. Ins. Co.*, 41 Cal. App. 4th 691, 697 (1995).)  Specifically, City Defendants argue that the wrongful death cause of action should be dismissed under 12(b)(7) for failure to join a party because California only permits a "single action" for wrongful death.  (*Id.* at 12.)  And Naphcare Defendants argue that "all heirs must join or be joined in a single § 377.60 wrongful death lawsuit, and there cannot be a series of separate wrongful death suits."  (Naphcare MTD at 6 (citing *Estate of Elkins v. Pelayo*, 2020 WL 2571387, at *5 (E.D. Cal. May 21, 2020).)

8

at 377.30.  Decedent's successor in interest is the "beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."  *Id.* at 377.11.

If a decedent dies intestate in California, as is the case here, (*see* B/Q Compl. ¶ 7), the beneficiaries are determined by Sections 6401 and 6402 of the California Probate Code. *See id.* at 377.10.  Where a decedent dies intestate and leaves a surviving spouse, the surviving spouse will receive the decedent's share of the community property.  *See* Cal. Prob. Code § 6401(a).  The surviving spouse will also receive all the decedent's separate property unless the decedent left issue, or is survived by a parent, a sibling, or a niece or nephew.  *See id.* at 6401(c).  If the decedent is survived by any of the above family members, the family member or members will receive a share of the decedent's separate property. *See id.* at 6401(c)(1)–(3), 6402.

### 1.    *Plaintiffs Benitez and Garcia*

County Defendants argue Plaintiffs Benitez and Garcia share succession rights and thus must proceed jointly, but because Plaintiff Benitez asserts she is the sole successor in interest, the claim fails because "the statute presupposes that the proper successor(s) have been identified."  (County MTD at 6 (citing Cal. Code Civ. Proc. §§ 377.30, 377.32).) Plaintiffs Benitez and Quintero argue this is merely a "matter for the successors in interest to resolve," not a basis for dismissal.  (B/Q Opp'n at 22.)

At the hearing, Plaintiff Benitez retracted her statement that she is Decedent's sole successor in interest and conceded that if she and Decedent were separated at the time the claim arose, then the claim may not be characterized as community property and both she and Garcia could be proper successors in interest.  (*See* ECF No. 57.)[5]  *See Saldivar*, 2022

---

[5]    There is some uncertainty as to Plaintiff Benitez and Decedent's marital status at the time of Decedent's death.  The Ramirez/Garcia SAC alleges that Plaintiff Benitez and Decedent "were separated since at least October 2022 and were living separately at the time Decedent sustained the injuries and damages alleged herein."  (R/G SAC ¶ 4.)  Further, Decedent's death certificate states he was "divorced." (*See* R/G SAC at Exhibit A.)  The Benitez/Quintero Complaint is silent as to Decedent and Benitez's marriage status and Plaintiffs Benitez and Quintero's Opposition merely states "Plaintiffs' Complaint does not anywhere suggest they were 'estranged' or 'living separately.'"  (B/Q Opp'n at 10.)  Given this

WL 19236738 at *4. Because both Plaintiffs Benitez and Garcia could be successors in interest under the California Probate Code and this case will move forward with a consolidated complaint, this is not a basis for dismissal at the motion to dismiss stage. *See Campos v. Cnty. of Los Angles*, No. CV 11-09613 DDP PJWX, 2012 WL 3656518, at *3 (C.D. Cal. Aug. 23, 2012) (finding that when the plaintiffs argued they were both successors in interest and there was uncertainty on the state of decedent's marriage at the time of death, the issue of standing is "more appropriately addressed on summary judgment"). Thus, to the extent County Defendants' Motion to Dismiss seeks to dismiss Plaintiffs Benitez and Quintero's survival claims for lack of standing, it is **DENIED**.

### 2. *Plaintiff Quintero*

County Defendants argue "California law does not recognize a financially dependent relative as a statutory heir entitled to succeed to a decedent's claims where the decedent is survived by a spouse and child." (County MTD at 6 (citing Cal. Prob. Code §§ 6401–6402).) Plaintiff Quintero argues he was a family member who lived with Decedent which is sufficient to be a successor in interest. (*See* B/Q Opp'n at 9–10.) Not so. Under California Probate Code § 6401, if an individual dies intestate with a surviving spouse and only one child, the decedent's community property and one half of the separate property goes to the surviving spouse and the remaining one half of the separate property goes to the child. Or under California Probate Code § 6402(a), if an individual dies intestate with no surviving spouse but with issue, the decedent's estate will go to their issue/child. Because Plaintiff Quintero would not be entitled to any of Decedent's property under the California Probate Code, Plaintiff Quintero is not a proper successor in interest. *See* Cal. Civ. P. Code § 377.11. To the extent the Benetiz/Quintero Complaint alleges survivor claims on behalf of Plaintiff Quintero, those claims are **DISMISSED**.[6]

---

uncertainty, there is the possibility that the cause of action is separate property. *See Saldivar v. Wright*, No. 2:20-CV-02081-CAS-PD, 2022 WL 19236738, at *4 (C.D. Cal. Dec. 8, 2022).

[6]    Naphcare Defendants argue that neither Plaintiff Benitez nor Quintero "filed or attached a declaration satisfying Section 377.32's mandatory requirement" and thus their survival claims are subject

### C.  *Monell* Standing

County Defendants argue Plaintiffs Benitez, Quintero, and Ramirez "cannot assert this violation in their individual capacities because they do[] not allege that any municipal policy, custom, or failure to train violated their own constitutional rights." (County MTD at 14.)  Plaintiff Ramirez argues because the SAC alleges Defendants' policies and practices were the moving force causing "Plaintiffs' economic and non-economic damages," she has standing.  (R/G Opp'n at 16) (citing SAC ¶ 119).)

County Defendants are incorrect.  A decedent's survivors have standing to assert *Monell* claims based on a violation of their substantive constitutional rights or those of the decedent.  *See McGinnis v. Cnty. of Sonoma*, No. 22-CV-06632-SI, 2023 WL 3874023, at *3 (N.D. Cal. June 6, 2023) (collecting cases); *see also Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012) (denying motion to dismiss *Monell* claim brought by decedent's mother where the court inferred that improper medical care resulted in the decedent's death and consequently the plaintiff's loss of her son's companionship).  The County Defendants' Motion to Dismiss is therefore **DENIED** with respect to *Monell* standing.

### D.  *Loss of Familial Association Standing*

County Defendants argue Plaintiffs have not alleged the type of highly personal relationship necessary for standing to pursue loss of familial association claims.  (*See* County MTD at 11.)  "[T]he relationships protected by the fourteenth amendment 'are those that attend the creation and sustenance of a family' and similar 'highly personal relationships.'"  *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1193 (9th Cir. 1988) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 618–19 (1984)).

/ / /

---

to dismissal.  (Naphcare MTD at 5.)  Naphcare Defendants are incorrect as to Plaintiff Benitez.  (*See* ECF No. 5 ("Benitez Decl.").)  As to Plaintiff Quintero, he does not contest that he did not file a declaration or argue why that should not be a basis for dismissal.  (*See generally* B/Q Opp'n.)  However, because Plaintiff Quintero is not a proper successor in interest, the Court does not need to consider whether the lack of a deceleration is a basis for dismissal.

### 1. Decedent's Estate

County Defendants argue "Decedent's estate lacks standing to bring this claim, which is a personal substantive due process right belonging only to surviving family members." (County MTD at 11.) Plaintiffs do not respond to this argument and thus concede its validity. *See Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2012 WL 4359229, at *11 (E.D. Cal. Feb. 23, 2012) (finding that the decedent's estate could not be included in the cause of action for loss of familial relationship). The Court therefore **DISMISSES** Decedent's estate from the familial association claim.

### 2. Plaintiff Benitez

County Defendants argue Plaintiff Benitez "alleges no facts showing an ongoing bond deprived by the Decedent's death; instead, the pleadings indicate they were estranged and living separately." (County MTD at 11.) The Benitez/Quintero Complaint is silent regarding Decedent and Benitez's marriage status. (*See generally* B/Q Compl.) Further, Plaintiffs Benitez and Quintero's Opposition states "Plaintiffs' Complaint does not anywhere suggest they were 'estranged' or 'living separately.'" (B/Q Opp'n at 10.) Plaintiff Benitez argues that she is Decedent's surviving spouse and "district courts within this Circuit have found that the right to familial association extends to surviving spouses." (*Id.* at 8 (citing *Morales v. City of Delano*, 852 F.Supp.2d 1253, 1274 (E.D. Cal. 2012)).)

While Plaintiff Benitez is correct that some district courts in this Circuit have found the right to familial association extends to surviving spouses, other district courts within this Circuit have declined to do so because the "Ninth Circuit has refrained from creating a substantive due process right to familial association with one's spouse." *Est. of Arroyo v. Cnty. of San Diego*, No. 3:21-CV-01956-RBM-SBC, 2024 WL 4668146, at *16 (S.D. Cal. Nov. 4, 2024) (dismissing a loss of familial association claim brought by a widow). But the Court need not decide whether there is a substantive due process right to familial association with one's spouse because Plaintiff Benitez fails to allege a judicially enforceable Fourteenth Amendment interest. Plaintiff Benitez and Quintero's Complaint does little more than allege Benitez is Decedent's surviving spouse, (*see* B/Q Compl. ¶ 5),

and conclusory allegations of intimate relationships are not sufficient. *See Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044 (N.D. Cal. 2022) ("[T]he mere label of 'spouse' . . . alone is insufficient to plead a right of familial association."). Thus, without considering County Defendants' argument that Benitez and Decedent were estranged, the Court **DISMISSES** Plaintiff Benitez's loss of familial association claim.

### 3. *Plaintiff Quintero*

Plaintiff Quintero does not allege his specific familial relationship with Decedent and the lack of information on his familial status was not resolved at the hearing. (*See* ECF No. 57.) Even assuming Plaintiff Quintero was a close family member to Decedent, such as a sibling, this would not be sufficient to create standing to assert a loss of familial association claim. *See Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991), *as amended on denial of reh'g* (June 16, 1992) (finding that siblings do not possess a cognizable liberty interest in their sibling's companionship and therefore siblings are not proper plaintiffs for loss of familial association claims). Further, Plaintiff Quintero's citation to *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), (*see* B/Q Opp'n at 8), does not provide any basis for the assertion that a "family member" that is "financially dependent" on a decedent has a substantive due process right to familial association. Because Plaintiff Quintero lacks loss of familial association standing, the Court **DISMISSES** Plaintiff Quintero's loss of familial association claim**.**

### E. *Deliberate Indifference Standing*

The Benitez-Quintero Complaint asserts a deliberate indifference claim by the Decedent's estate and Plaintiffs Benitez and Quintero in their individual capacities. (*See* B/Q Compl. ¶¶ 63–76.) County Defendants argue "the Benitez-Quintero Plaintiffs lack standing to pursue this claim in their individual capacities" because survival claims for deliberate indifference "belong exclusively to the Decedent's estate via successor(s) in interest." (County MTD at 7.) Plaintiffs respond that they are successors in interest, (*see* B/Q Opp'n at 9–10), and therefore concede that the proper plaintiff for the deliberate indifference claim is a successor in interest. Thus, to the extent the deliberate indifference

claim is brought by Decedent's estate and Plaintiffs Benitez and Quintero in their individual capacities, the claims are **DISMISSED.**

## II.    Statutory Immunity

The Court now turns to the City of Escondido and County of San Diego's statutory immunity arguments.  (*See* City MTD at 14; County MTD at 19.)  Under California Government Code § 815(a), "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Plaintiffs, therefore, can only sufficiently allege state law claims if they can point to a statute that provides for liability.

Plaintiffs rely on California Government Code §§ 815.2(a), 820(a), and 845.6.  (*See* B/Q Opp'n at 17; R/G Opp'n at 20.)  Under Section 815.2, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  And under Section 820, "[e]xcept as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person."  However, under Section 844.6, "except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6 . . . a public entity is not liable for . . . [a]n injury to any prisoner."  As a result, Sections 815.2(a) and 820 do not apply to injuries to prisoners. *See Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1383 (2010) (reasoning that "[a]lthough a public entity may be vicariously liable for the acts and omissions of its employees ([Cal.] Gov. Code § 815.2), that rule does not apply in the case of injuries to prisoners") (citing Cal. Gov. Code § 844.6); *see also Neuroth v. Mendocino County*, No. 15-CV-03226-NJV, 2016 WL 379806, at *5 (N.D. Cal. Jan. 29, 2016) (dismissing a Bane Act claim as to Mendocino County because the plaintiff's "reliance on a theory of vicarious liability through an employee through § 815.2 in order to avoid the immunity provisions of § 844.6 fails") (citation omitted).  Defendants' statutory immunity arguments, therefore, turn on whether Decedent was a "prisoner."

Under Section 844, "prisoner" includes "a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked." Cal. Gov. Code § 844. Individuals become a prisoner "as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes." *Id.* Here, because Decedent was lawfully arrested and brought to VDF pursuant to the penal process, he was a "prisoner" under Section 844 upon his entry into VDF. Because Plaintiff qualified as a prisoner once he entered VDF, Plaintiffs' state law claims against the County of San Diego are barred except for Plaintiffs Benitez and Quintero's Section 845.6 claim which is exempted in Section 844.6. Plaintiffs conceded at the hearing that Section 844.6 statutory immunity bars claims against the County of San Diego except for the Section 845.6 claim. (*See* ECF No. 57.) Thus, the Court **DISMISSES** Plaintiffs' state law claims, except for the Section 845.6 claim, against the County of San Diego. As to the City of Escondido, because Decedent was not a "prisoner" before he entered VDF, the Court **DENIES** the City Defendants' Motion to Dismiss to the extent it is based on statutory immunity.

## III.    City Defendants' Motion to Dismiss[7]

City Defendants argue "Plaintiffs fail to plausibly allege that any force was used by any Escondido Defendants, let alone unreasonable force; Plaintiffs cannot, as a matter of law, identify a legal duty owed by Officer Albergo to [Decedent] pursuant to PC § 647(g); Plaintiffs fail to plausibly allege or show any responsibility by the Escondido Defendants for any alleged actions or omissions while [Decedent] was at VDF, i.e., in San Diego County custody, and Plaintiffs failed to set forth allegations sufficient to demonstrate compliance with California Government Claims Act claim filing requirements." (City MTD at 2.)

### A.    *Government Claims Act Compliance*

City Defendants argue "Plaintiffs failed to set forth plausible allegations of compliance with the GCA claim filing requirements." (*Id.* at 16.) Plaintiffs Benitez and

---

[7]    City Defendants are named as Defendants only in the Benitez/Quintero Complaint. (*See generally* B/Q Compl.; R/G SAC.)

Quintero allege they "timely filed their Government Claims for Damages with . . . Defendant City of Escondido and filed this lawsuit within six months of the rejection of their claims." (B/Q Compl. ¶ 4.)  City Defendants argue this is insufficient and Plaintiffs "must at least allege when claims were presented to the City of Escondido." (City MTD at 16.)  Plaintiffs disagree and argue "[n]othing more is required of Plaintiffs, and Defendants have offered no authority or evidence to the contrary." (B/Q Opp'n at 18.)

California Government Code § 905 requires "all claims for money or damages against local public entities" be presented to the public entity before a lawsuit is filed.  And under California Government Code § 945.4, failure to present a timely claim bars suit against the entity.  The Government Claims Act applies to state law claims in federal court. *See Butler v. Los Angeles Cnty.*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).  In California state court, a general statement of compliance with the GCA is sufficient.  *See Perez v. Golden Empire Transit Dist.*, 209 Cal. App. 4th 1228, 1237 (2012).  In contrast, under federal pleading standards, "bare allegations that a plaintiff has complied with the GCA are insufficient." *Shannon v. Cnty. of Sacramento*, No. 215CV00967KJMCKD, 2016 WL 1138190, at *4 (E.D. Cal. Mar. 23, 2016) (finding a complaint stating that prior to bringing suit, the plaintiff complied with the Government Claims Act by filing a claim with Sacramento County and the date of rejection was insufficient because it amounted to no more than a "legal conclusion"); *see also Cardenas v. Cnty. of Tehama*, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020) (finding the allegation that the plaintiffs filed timely administrative tort claims and timely filed the lawsuit within six months of defendants' rejections of those claims was a mere legal conclusion).  Plaintiffs Benitez and Quintero only allege they filed a claim with the City of Escondido, and that they filed this lawsuit within six months of the rejection of their claims. (*See* B/Q Compl. ¶ 4.)  Because the Complaint contains no more than a bare legal conclusion of GCA compliance, the Court **DISMISSES** Plaintiffs Benitez and Quintero's state law claims against the City of Escondido.

/ / /

### B.    Excessive Force

City Defendants argue Plaintiffs' excessive force allegations are "completely conclusory" and thus do not satisfy the Rule 8 pleading standard. (City MTD at 2.)  The Benitez/Quintero Complaint alleges that while arresting Decedent, Defendants Albergo and Does 21 through 30 "brutalized [Decedent], subjecting [Decedent] to unreasonable and excessive force, [when Decedent] did not resist arrest, nor was he a threat to" Defendants. (B/Q Compl. ¶ 34.)  Plaintiffs also allege that "the severe head injuries [Decedent] sustained occurred while he was at VDF *or* [were] caused by A[lbergo] and D[oes] 21 through 30, inclusive, during his arrest." (*Id.* ¶ 38) (emphasis added).  Because the allegations of how Decedent's head injury occurred are "internally inconsistent, the Court need not accept them as true." *Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, No. 04CV1136 DMS BLM, 2006 WL 6667002, at *9 (S.D. Cal. Jan. 5, 2006), *aff'd sub nom. Wuxi Multimedia Ltd. v. Koninklijke Philips Elecs., N.A.*, 280 F. App'x 968 (Fed. Cir. 2008).

To state an excessive force claim, a plaintiff must allege facts showing that the defendant's conduct was "objectively unreasonable in light of the facts and circumstances confronting them." *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  Here, Plaintiffs have failed to allege what force was used by Defendant Albergo and Plaintiffs' own allegations illustrate the only reasonable inference is that Decedent's head injury occurred at VDF.  (*See* B/Q Compl. ¶¶ 38 ("At the time of his VDF booking, [Decedent] was not identified by medical staff as having any head injuries."), 47 ("[D]ue to the severity of the head injuries [Decedent] sustained at VDF. . .").)  Because Plaintiffs fail to plausibly allege excessive force by Defendant Albergo or Does 21 through 30, the Court **DISMISSES** Plaintiffs' excessive force claim.  *See Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief") (citation omitted).

/ / /

1      ***C.***        ***1983 Claims***

2         City Defendants argue for the third and fourth causes of action, all the "allegations

3  relate to a period of time in which [Decedent] was in VDF custody" and thus there was no

4  involvement by the City Defendants.  (City MTD at 9.)  Plaintiffs argue that "to the extent

5  Plaintiffs' injuries were caused by C[ity] Defendants' actions while he was in their custody,

6  C[ity] Defendants are liable."  (B/Q Opp'n at 14.)

7         "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right

8  secured by the Constitution and laws of the United States, and [2] must show that the

9  alleged deprivation was committed by a person acting under color of state law." *Naffe v.*

10  *Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48

11  (1988)).  "[F]or persons who are detained by police in the course of an arrest, the Fourth

12  Amendment's prohibition on the use of excessive force protects against the deprivation of

13  necessary medical care." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 769 (9th

14  Cir. 2025) (citing *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1098–99 (9th Cir. 2006)).

15  "To establish deliberate indifference to medical needs, a pretrial detainee must show (1) a

16  serious medical need and (2) a deliberately indifferent response, such as defendants'

17  den[ial], delay or intentional interference with medical treatment." *Young v. City of*

18  *Menifee*, No. ED-CV-17-1630-JGBSPX, 2019 WL 4238880, at *7 (C.D. Cal. Aug. 2,

19  2019) (second alteration in original and internal quotation marks omitted) (quoting *Est. of*

20  *Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1112 (E.D. Cal. 2013)

21  (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006))).  "[W]hat is required under

22  the Fourth Amendment is 'objectively reasonable post-arrest care,' which means that

23  police officers must 'seek the necessary medical attention for a detainee when he or she

24  has been injured while being apprehended by either promptly summoning the necessary

25  medical help or by taking the injured detainee to a hospital.'" *D'Braunstein*, 131 F.4th at

26  769 (quoting *Tatum*, 441 F.3d at 1099).  "But this does not 'require an officer to provide

27  what hindsight reveals to be the most effective medical care for an arrested suspect.'" *Id.*

28  (quoting *Tatum*, 441 F.3d at 1098).

Because Plaintiffs only allege "[a]t the time of [Decedent's] booking, [he] was suffering from acute alcohol intoxication which was known to Defendants," (B/Q Compl. ¶ 37), Plaintiffs do not plausibly allege Decedent was suffering from a serious medical need when Defendant Albergo arrested him. *See Border v. Trumbull Cnty. Bd. Of Com'rs.*, 414 F.App'x 831, 837 (6th Cir. 2011) ("[A] pretrial detainee's generalized state of intoxication, without more, is insufficient to establish a serious medical need or an officer's deliberate indifference to a substantial risk of serious harm to a detainee."). As a result, the Court **DISMISSES** the Section 1983 claims against City Defendants.

### C.    *Loss of Familial Association*

Because Plaintiffs fail to state a claim against City Defendants for excessive force or deliberate indifference, the loss of familial association claim also fails. *See infra* Section IV.C.1 (explaining the standard for loss of familial association is deliberate indifference when, as occurred here, there is time to deliberate). The Court therefore **DISMISSES** Plaintiffs' loss of familial association claim against City Defendants.

### D.    *Monell Claims*

Under *Monell v. Department of Social Services of the City of New York*, a plaintiff cannot sue a municipality under a theory of respondeat superior for the constitutional violations of its employees or agents. 436 U.S. 658, 691 (1978). Instead, municipalities are liable only when an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* To state a claim under *Monell*, the plaintiff must allege (1) a deprivation of a constitutional right, (2) a policy, (3) which amounted to a deliberate indifference to the plaintiff's constitutional right, and (4) that the policy was the "moving force behind the constitutional violation." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

At the motion to dismiss stage, the Ninth Circuit has made it clear that claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*. *See A.E. v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Thus, the following two rules govern the Court's evaluation of Plaintiffs' *Monell* allegations: (1) the complaint "may not

simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (2) the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* at 636–37.

City Defendants argue Plaintiffs' *Monell* claim does not establish the alleged policy or custom was the "moving force" behind the injury and that Plaintiffs "fail to identify a City of Escondido policy, custom, or practice, or failure to train." (City MTD at 10–11.) Plaintiff Benitez and Quintero respond with a conclusory argument that "the facts alleged in the Complaint are clearly sufficient for purposes of alleging *Monell* claims against municipal / institutional defendants." (B/Q Opp'n at 16–17.) Examining Plaintiffs Benitez and Quintero's Complaint, Plaintiffs allege the County of San Diego, City of Escondido, Naphcare, Inc., and Naphcare San Diego, LLC "maintained a long-standing unconstitutional policy, custom, and/or practice which allowed its officers, deputies and medical staff to delay and/or deny medical care to inmates" and cite to statistics and cases related to deaths in San Diego jails. (B/Q Compl. ¶¶ 33–35, 96.) Because Plaintiffs' allegations only relate to conduct in San Diego County jails, Plaintiffs have failed to provide factual allegations illustrating that the City of Escondido had any relevant policy or custom. Thus, the Court **DISMISSES** Plaintiffs' *Monell* claims against the City of Escondido.

### D. *State Law Causes of Action*

#### 1. *Battery*

To state a claim for battery under California law, a plaintiff must allege that "the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person." *See Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). Plaintiffs argue they have "sufficiently alleged that Defendants caused [Decedent's] severe head injuries[] and have thus sufficiently alleged claims for battery under California law." (B/Q Opp'n at 24.)

Plaintiffs are incorrect.  Plaintiffs' Complaint alleges Decedent's severe head injury was "sustained at VDF" and that the injury was a "result of either falling from a top bunk or alternatively, physical injuries from interactions with other inmates due to jail staff failing to provide for [Decedent's] physical safety *or alternatively*, by A[lbergo] and D[oes] 21 through 30 inclusive, all of which would not have occurred if [Decedent] was referred to the emergency room for appropriate treatment or properly housed in housing which afforded close monitoring of his medical condition . . ." (B/Q Compl. ¶ 47 (emphasis added).)  Like Plaintiffs' excessive force claim, conclusory and internally inconsistent allegations are not sufficient to state a plausible battery claim.  Thus, the Court **DISMISSES** the battery cause of action against City Defendants.

### 2.  The Bane Act

City Defendants also argue Plaintiffs' Bane Act claim fails for the same reasons Plaintiffs' other state law claims fail.  (*See* City MTD at 11.)  California Civil Code § 52.1 provides a cause of action for violations of plaintiffs' state or federal civil rights committed using "threats, intimidation, or coercion."  Plaintiffs rely on the fact that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1."  (B/Q Opp'n at 24 (citing *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–1106 (9th Cir. 2014).)  Because Plaintiffs have failed to state a claim for excessive force, *see supra* Section III.B, and Plaintiffs do not separately allege any threats, intimidation, or coercion by the City Defendants, the Court **DISMISSES** the Bane Act cause of action against City Defendants.

### 3.  Negligence

"A plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Frausto v. Dep't of California Highway Patrol*, 53 Cal. App. 5th 973, 988 (2020). City Defendants argue the only allegations set forth relating to the City Defendants are failure to comply with California Penal Code § 647(g), which does not give rise to civil liability. (*See* City MTD at 12.)  Plaintiffs Benitez and Quintero argue that "[o]fficers may

breach their duty to seek medical care for arrestees who are in serious needs of medical care, where they ignored signs, symptoms, and 'strange behavior which a reasonable officer in Defendants' position should have attributed to something other than alcohol intoxication.'" (B/Q Opp'n at 20 (citing *Lum v. Cty. of San Joaquin*, 756 F.Supp.2d 1243, 1254 (E.D. Cal. 2010)).)

While City Defendants are correct that California Penal Code § 647(g) does not create an affirmative duty, *see Stout v. City of Porterville*, 148 Cal. App. 3d 937, 947 (Ct. App. 1983), this is not the only basis for finding Defendant Albergo had a duty towards Decedent.  Arresting officers have a duty to use reasonable care when responding to an arrestee's medical needs.  *See Frausto*, 53 Cal. App. 5th at 993; *see also Winger v. City of Garden Grove*, 806 F. App'x 544, 546 (9th Cir. 2020) ("[W]e conclude that the California Supreme Court would conclude that a law enforcement officer owes a duty of reasonable care to an arrestee in his custody who needs immediate medical attention.").

However, City Defendants are also correct that Plaintiffs have failed to allege that Decedent needed immediate medical attention when he was arrested by Defendant Albergo.  (*See* City Reply at 4.)  Plaintiffs allege "[a]t the time of [Decedent's] booking, [he] was suffering from acute alcohol intoxication which was known to Defendants.  (B/Q Compl. ¶ 37.)  But Plaintiffs fail to allege Decedent's intoxication was a serious medical need at the time Defendant Albergo arrested Decedent.  *See Border*, 414 F.App'x at 837.  Because Plaintiffs fail to allege that Decedent was suffering an immediate medical need when he was arrested by Defendant Albergo, they fail to plausibly allege Defendant Albergo (or any Doe Defendants) had or breached a duty of care.  Thus, the Court **DISMISSES** the negligence claim against City Defendants.

### 4.    Section 845.6

California Government Code § 845.6 creates an affirmative duty for jail officials "to furnish or obtain medical care for a prisoner in his custody."  Decedent was not a "prisoner" when he was held by Defendant Albergo because he had not yet entered a prison, jail, or penal or correctional facility, pursuant to penal processes.  *See* Cal. Gov. Code § 844.

25-CV-1143 TWR (DDL)

Accordingly, California Government Code § 845.6 does not apply, and the Court **DISMISSES** the Section 845.6 claim against City Defendants.

### 5.    *Medical Negligence*

To state a claim for medical negligence, a plaintiff must plead: "(1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Doe v. United States*, 704 F. Supp. 3d 1049, 1055 (C.D. Cal. 2023) (citation omitted).  City Defendants argue "there is no allegation in the Complaint that EPD Officer Albergo or any other Escondido Defendants are health care providers or trained medical professionals." (City MTD at 13.)  Plaintiffs Benitez and Quintero do not respond to this argument in their Opposition and thus waive it. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (collecting cases); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).  The Court therefore **DISMISSES** the claim of medical negligence against City Defendants.

### 6.    *Wrongful Death*

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015).  Because Plaintiffs' fail to allege negligence or some other wrongful act, *see supra* Sections III.D.1–5, the Court **DISMISSES** the wrongful death claim against City Defendants.

## IV.    **County Defendants' Motion to Dismiss**

County Defendants argue Plaintiffs fail to state a claim for the following causes of action: (1) deliberate indifference, (2) loss of familial association, (3) *Monell*, (4) the Bane Act, and (5) Government Code Section 845.6. (*See generally* County MTD.)  County Defendants also argue the following issues: (1) lack of casual connection for supervisory

defendants, (2) failure to comply with the Government Claims Act, (3) Plaintiffs Benitez and Quintero's medical negligence claim is time-barred, and (4) Plaintiffs Benitez and Quintero's due process claim is duplicative.  (*See id.*)

### A. Government Claims Act Compliance

The Court concluded that statutory immunity bars all state law claims against the County of San Diego except for Plaintiffs Benitez and Quintero's Section 845.6 claim.  *See supra* Section II.  County Defendants also argue Plaintiffs Benitez and Quintero's state law claims fail because their claims submitted to the County of San Diego do not comply with the Government Claims Act requirements.  (*See* County MTD at 18.)

#### 1. County Defendants' Request for Judicial Notice

County Defendants' Request for Judicial Notice ("RJN," ECF No. 32-3), asks the Court to take judicial notice of (1) a "true and correct copy of the Government Claim submitted to the County of San Diego by Plaintiff Maritza Benitez, dated September 26, 2024, received by the County of San Diego on September 30, 2024" and (2) a "true and correct copy of the Government Claim submitted to the County of San Diego by Plaintiff Jose Alberto Quintero, dated October 9, 2024, received by the County of San Diego on October 14, 2024."  (*Id.* at 2.)  County Defendants argue because "Plaintiffs' Complaint expressly alleges compliance with the Government Claims Act . . . the existence and contents of the government claim are therefore necessarily relied upon."  (*Id.* at 2–3.)  County Defendants, therefore, argue that the Court may properly consider them under the incorporation-by-reference doctrine.  (*See id.*)

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'"  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).  The court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records."  *Id.*  Unlike rule-established judicial notice, under the incorporation by reference doctrine, "courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not

physically attached to the [plaintiff's] pleading.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).  A defendant may seek to incorporate a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*

To the extent County Defendants request the Court incorporate by reference the contents of the Plaintiffs' government tort claims, the request is **GRANTED** because Plaintiffs Benitez and Quintero's Complaint explicitly refers to the documents in question (*see* B/Q Compl. ¶ 4), such documents are central to Plaintiffs' claims as timely filing and rejection is a prerequisite to filing a civil complaint, *see City of Stockton v. Superior Ct.*, 42 Cal. 4th 730, 738 (2007), and no party has contested the authenticity of such documents.

### 2.  Analysis

County Defendants argue Plaintiffs Benitez and Quintero did not comply with the Government Claims Act requirements.  (*See* County MTD at 18.)  Further, County Defendants argue Plaintiffs Benitez and Quintero have "effectively conceded the issue" by not responding to this argument in their Opposition.  (County Reply at 7.)  Because Plaintiffs Benitez and Quintero's Opposition does not respond to the County Defendants' Government Claims Act argument, (*see* B/Q Opp'n at 18), they have waived this issue. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.[8]  Thus, the Court **DISMISSES**

---

[8]     County Defendants' argument also prevails on the merits.  Before bringing a suit against a public entity, the Government Tort Claims Act requires the timely presentation of a written claim and a rejection in whole or part.  Cal. Gov. Code § 905; *State of California v. Superior Court (Bodde)*, 90 P.3d 116, 119 (Cal. 2004) ("Under [the Government Claims Act], failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.").  A "claim need not contain the detail and specificity required of a pleading, but need only fairly describe what the entity is alleged to have done." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004) (cleaned up) (citation omitted).  Therefore, "where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' . . . courts generally found the complaint barred." *Id.* at 447 (quoting *Blair v. Superior Court*, 218 Cal. App. 3d 221, 226 (1990)).

the state law claims asserted by Plaintiffs Benitez and Quintero against the County of San Diego.[9]

## B.    *Deliberate Indifference*

County Defendants argue Plaintiffs fail to allege conduct that rises to the level of deliberate indifference.  (*See* County MTD at 7–10.)  "[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment[10] are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take

---

[9]    Examining both claims filed with the County of San Diego, Plaintiffs Benitez and Quintero only alleged excessive force.  (*See generally* RJN.)  In Plaintiff Quintero's claim he states, "various San Diego County Sheriff's Department deputies arrested and used excessive force."  (*Id.* at Exh. B.)  Plaintiff Benitez's claim makes the same allegation.  (*Id.* at Exh. A.)  Accordingly, the question before the Court is whether Plaintiffs allegations of "excessive force" are broad enough to encompass the allegations in the Complaint of medical misconduct by the County at VDF.  *See Stockett*, 34 Cal. 4th at 447 ("A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts.").  Plaintiffs Benitez and Quintero's Complaint does not make any excessive force claims against the County.  Instead, the Complaint argues that Decedent's medical care at VDF resulted in unsafe housing and his ultimate death.  (*See generally* B/Q Compl.)  Because liability in the Complaint is premised on an entirely different factual basis which would implicate different parties than stated in the government claim, Plaintiff Benitez and Quintero's claims fail to put the County on notice of their claims based on medical misconduct within VDF.  As a result, the California state law claims against County Defendants are barred by the Government Claims Act.  *See, e.g., Hernandez v. City of Stockton*, 90 Cal. App. 5th 1222, 1234 (2023) (finding that the plaintiff's complaint was barred because the factual basis for recovery asserted in their complaint was not fairly reflected in the government claim).

[9]    The Court notes that the filing of a consolidated amended complaint will not cure this defect.  "Where two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another."  *Nelson v. County of Los Angeles*, 113 Cal. App. 4th 783, 796 (2003).  "This rule applies where different claimants are alleging survivor theories and wrongful death theories of liability arising from the same transaction."  *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1062 (2013).

[10]    The Benitez/Quintero Complaint asserts both the Eight Amendment and Fourteenth Amendment as bases for the deliberate indifference claim.  (*See* B/Q Compl. ¶ 88.)  "Claims of failure to provide care for serious medical needs, when brought by a detainee who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment."  *Frary v. Cnty. of Marin*, No. C 12-3928 MEJ, 2012 WL 6218196, *6 (N.D. Cal. Dec. 13, 2012) (citing *Lolli v. County of Orange*, 351 F.3d 410, 418–89 (9th Cir. 2003)).

reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For the third element, the defendant's conduct "must be objectively unreasonable" which is "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* "Neither mere lack of due care, nor an inadvertent failure to provide adequate medical care, nor even medical malpractice, without more, is sufficient to meet this standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021) (cleaned up). "Instead, a plaintiff must show that the defendant disregarded an excessive risk to the plaintiff's health and safety by failing to take reasonable and available measures that could have eliminated that risk." *Id.*

### 1.    Defendant Mata[11]

Defendant Mata, a registered nurse employed by San Diego County, marked on the Medical Clearance Assessment that Decedent was "fit to continue" the booking process without selecting that Decedent should be assigned to a sobering cell or other safety housing and failed to mark the following items on Decedent's Medical Clearance assessment: that he was confused, had an altered mental status, was in withdrawal, had slurred speech, had unsteady gait, had a stupor, was tremulous, or was disoriented. (B/Q Compl ¶ 40.)

County Defendants do not dispute that alcohol withdrawal is a serious medical condition, nor that Defendant Mata incorrectly filled out the intake form. (*See generally* County MTD.) Rather, County Defendants argue "[w]hile Plaintiffs claim that Defendant

---

[11]    The *Ramirez-Garcia* Plaintiffs' request judicial notice of a separate lawsuit in which Defendant Mata is also named as a defendant. (*See* R/G Opp'n at n.1.) County Defendants argue the lawsuit "has no bearing on the allegations here, even more so considering that dismissal motions are pending." (County Reply at 3 n.1.) Under Federal Rules of Evidence Rule 201, the Court cannot take judicial notice of disputed facts contained in public records; therefore, the Court finds no basis to take judicial notice of the separate lawsuit where Defendant Mata is named as a defendant.

M[ata] observed that the Decedent 'was experiencing tremors, nausea, vomiting, slurred speech, and was disoriented,' they plead no facts suggesting that it was objectively unreasonable for Defendant M[ata] to conclude that the Decedent could be appropriately assessed and treated at VDF." (*Id.* at 8.)  Further, County Defendants argue Plaintiffs fail "to allege the defendant-specific conduct, knowledge, or causation required for deliberate indifference" and "[a]bsent any theory connecting the paperwork to harm, dismissal is required as to Defendant Mata." (County Reply at 3.)  County Defendants are incorrect; at the motion to dismiss stage, Plaintiffs need only plausibly allege Defendant Mata was deliberately indifferent to Decedent's serious medical needs.

### a. Knowledge

Plaintiffs allege Defendant Mata was aware of Decedent's alcohol withdrawal symptoms.  (*See* B/Q Compl. ¶ 40 (stating Defendant Mata was aware Decedent "was experiencing tremors, nausea, vomiting, slurred speech and was disoriented because he had noted those symptoms on a CIWA form").)  Further, Plaintiffs allege Decedent's symptoms of alcohol withdrawal were "obvious." (*Id.*)  Taking the facts in the light most favorable to Plaintiffs, the Court finds Plaintiffs plausibly allege Defendant Mata had knowledge Decedent was suffering from alcohol withdrawal, a severe medical condition.

### b. Intentional Objectively Unreasonable Conduct

Since a reasonable jury could find that Defendant Mata had knowledge that Decedent was going through alcohol withdrawal, they could find Defendant Mata's intentional choice to fill out the intake form incorrectly and determination that Decedent was "fit to continue" was objectively unreasonable. *See M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1078 (N.D. Cal. 2014) (finding that a reasonable jury could find a nurse was deliberately indifferent when she was "aware of the risk of alcohol withdrawal, but failed nevertheless to fill out a CIWA form, initiate the CIWA protocol, or otherwise ensure [the decedent] would receive medical help"); *see also Gordon v. Cnty. of Orange*, 6 F.4th 961, 971 n.5 (9th Cir. 2021) (citing *Thornhill for Estate of Berry v. Aylor*, No. 15-CV-24 (GEC), 2017 WL 4685986, at *10–11 (W.D. Va. Oct. 18, 2017) (denying summary

judgment for screening nurse who "knew that [inmate] had a history of alcohol abuse and that the signs of alcohol withdrawal would develop later" but failed to initiate CIWA protocol because she believed he "was at a risk for only heroin, and not alcohol, withdrawal")); *see also Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1040 (D. Or. 2022) (concluding, at the summary judgment stage, that the plaintiffs provided sufficient evidence that the nurse defendant violated the decedent's right to receive adequate medical care when she deliberately ignored the decedent's criminal history which increased the likelihood that the decedent's suicidal tendencies would go undetected and failed to take reasonable measures to mitigate the risk).  Accordingly, the Court finds Plaintiffs properly allege Defendant Mata engaged in intentional objectively unreasonable conduct.

### c.   Causation

Plaintiffs plausibly allege causation by stating if Defendant Mata had accurately documented Decedent's symptoms, he would have been given immediate medical treatment or been placed into specialized housing for his safety.  (*See* B/Q Compl. ¶ 40.)  The Ninth Circuit has found similar allegations of causation from a chain of events sufficient.  *See, e.g., Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075–76 (9th Cir. 2016) (finding that a lack of consistent monitoring and housing policy caused the decedent's injury from an attack by another inmate).  Thus, the Court concludes a reasonable jury could find Defendant Mata's actions were deliberately indifferent to a serious medical risk and caused Decedent's death.  Accordingly, the Court **DENIES** the County Defendants' Motion to Dismiss with respect to the deliberate indifference claim against Defendant Mata.

### 2.   *Defendant Castleberry*

Plaintiffs allege Defendant Castleberry, a registered nurse employed by San Diego County, "knew or should have known" Decedent "required emergency room treatment for his life-threatening alcohol withdrawal symptoms but did not refer him for such immediate treatment."  (B/Q Compl. ¶ 45.)  Plaintiffs also allege Defendant Castleberry failed to

ensure Decedent took prescribed alcohol withdrawal medications and did not fully complete a medication-refusal form. (*See id.*) County Defendants argue "[a]t most, Plaintiffs allege that she failed to confirm medication compliance or fully complete a refusal form—facts that do not plausibly suggest that she recognized and consciously disregarded a serious risk of harm." (County MTD at 10.)

a.    Plaintiffs Benitez and Quintero's Complaint

Plaintiffs Benitez and Quintero do not sufficiently allege Defendant Castleberry "made an intentional decision with respect to the conditions under which the plaintiff was confined." *Gordon*, 888 F.3d at 1125. Unlike Plaintiffs' allegations relating to Defendant Mata—which detailed how he was aware of Decedent's symptoms of alcohol withdrawal—Plaintiffs' allegations relating to Defendant Castleberry are limited to the statement that she "knew or should have known" that Decedent "required emergency room treatment for his life-threatening alcohol withdrawal symptoms." (B/Q Compl. ¶ 45.) This assertion amounts to no more than a legal conclusion. *See Iqbal*, 556 U.S. at 679. Thus, the Court **DISMISSES** Plaintiffs Benitez and Quintero's deliberate indifference claim against Defendant Castleberry**.**

b.    Plaintiffs Ramirez and Garcia's SAC

In contrast, Plaintiffs Ramirez and Garcia's SAC alleges that Defendant Castleberry "knew that [Decedent] had been vomiting, was disoriented, had tremors, was intoxicated, in withdrawal, had slurred speech, an unsteady gait, and suffered from seizures." (SAC ¶ 47.) Taking the facts in the light most favorable to Plaintiffs, the Court finds Plaintiffs plausibly allege Defendant Castleberry had knowledge Decedent was suffering from alcohol withdrawal, a severe medical condition.

Thus, the Court must consider whether Defendant Castleberry made an intentional choice that was objectively unreasonable. Plaintiffs Ramirez and Garcia allege Defendant Castleberry chose to not immediately refer Decedent to the emergency room and/or appropriate specialized housing that would provide adequate medical monitoring, despite knowing Decedent "had not taken necessary medications to treat his obvious symptoms."

(R/G SAC ¶ 49.)  At this stage, the Court concludes a reasonable jury could find Defendant Castleberry's intentional choice not to refer Decedent to the emergency room or specialized housing was objectively unreasonable based on Decedent's refusal to take his medication and obvious signs of alcohol withdrawal.  *See Castro*, 833 F.3d at 1070–72 (explaining that a defendant's "lack of response" can be an intentional act sufficient for a deliberate indifference claim); *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 670 (9th Cir. 2021) (finding a jury could conclude that a nurse's actions of administering a quick test and then ignoring the decedent were "akin to reckless disregard" when a reasonable nurse would have known the decedent faced a substantial risk of suffering serious harm). Accordingly, the Court **DENIES** the County Defendants' Motion to Dismiss Plaintiffs Ramirez and Garcia's deliberate indifference claim against Defendant Castleberry.

### C.    *Loss of Familial Association*

To show a violation of the right to familial association under the Fourteenth Amendment, a plaintiff must establish that a state actor's conduct shocks the conscience. *See Scott v. Smith*, 109 F.4th 1215, 1227–28 (9th Cir. 2024)

#### 1.    *The Applicable Standard*

"First, [the Court] must decide the appropriate standard of culpability to apply to [Defendants'] conduct to determine whether it 'shocks the conscience' under the Fourteenth Amendment's Due Process Clause." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  The "deliberate-indifference test" applies when a situation "evolve[s] in a time frame that permits the officer to deliberate before acting."  *Id.*  And the more demanding "purpose-to-harm test" applies when a situation "escalate[s] so quickly that the officer must make a snap judgment."  *Id.*

The Parties disagree on which standard applies here.  County Defendants argue "where the alleged deprivation results from unintentional government conduct, liability

only arises if the conduct was so egregious as to meet this heightened standard."[12]  (County MTD at 12.)  Plaintiffs Benitez and Quintero argue "defendants had time to deliberate so the 'deliberate indifference' standard applies, not purpose to harm."  (B/Q Opp'n at 12.)  Here, Defendants had plenty of time to deliberate while they interacted with Decedent and the situation was not escalating until Decedent suffered his head injury; therefore, the deliberate indifference standard applies.  *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) ("A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner.").

### 2.    *Violation of the Fourteenth Amendment*

Because the deliberate indifference standard applies and the Court determined Plaintiffs plausibly allege deliberate indifference, *see supra* Section IV.B, Plaintiffs also plausibly state a claim for loss of familial association.  Thus, the Court **DENIES** the County Defendants' Motion to Dismiss the loss of familial association claim.

### D.    ***Plaintiffs Ramirez and Garcia's Failure to Train and Supervise Claims***

The Ramirez-Garcia SAC asserts a failure to train and supervise claim on behalf of the Decedent's estate against Supervisory Doe Defendants 1–9.  (*See* R/G SAC ¶¶ 68–98.)  County Defendants argue the "Ramirez-Garcia SAC does not allege that any Supervisory Doe Defendant personally committed a constitutional violation, nor does it allege that any exercised authority over a subordinate who did so."  (County MTD at 13.)

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  For example, "[a] supervisor can be liable in his

---

[12]    County Defendants do not cite any authority for this proposition.  (*See* County MTD at 12.)  Further, the Court has already concluded the individually named County Defendants made intentional choices.  *See supra* Section IV.B.

individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

For Does 1–4, Plaintiffs Ramirez and Garcia argue they "failed to properly train their subordinates on: dealing with inmates in medical distress; communicating critical medical information; treatment of withdrawals/seizures; NCCHC Standards; and supervisors' duty to ensure all employees were properly trained to meet the needs of their patients." (R/G Opp'n at 14 (citing SAC ¶¶ 69–73).) For Does 5–9, Plaintiffs Ramirez and Garcia allege they "failed to properly train and supervise defendants Mata, Castleberry, Dai and Does 10–30 in the performance of their duties in evaluating ill patients; assigning appropriate housing for individuals in withdrawal; and/or performing required cell safety checks." (*Id.* at 15 (citing SAC ¶ 87).) For all Doe Defendants, Plaintiffs Ramirez and Garcia argue the failures to train caused, denied, or delayed care for Decedent, which resulted in his death. (*See id.*)

Plaintiffs' general allegations are not sufficient to plausibly allege supervisor liability. Plaintiffs "must at least attempt to 'refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on . . . [and] allege specific facts showing how *each particular doe defendant* violated his rights.'" *Hernandez v. San Bernardino Cnty.*, No. ED-CV-2:21-101-JGBSPX, 2023 WL 3432206, at *4 (C.D. Cal. Jan. 26, 2023) (alterations in original & emphasis added) (quoting *Keavney v. Cnty. of S.D.*, No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)). Accordingly, the Court **DISMISSES** Plaintiffs Ramirez and Garcia's third and fourth causes of action for failure to train and supervise.

### E.    Monell Claims

To state a claim under *Monell*, the plaintiff must allege (1) a deprivation of a constitutional right, (2) a policy, (3) which amounted to a deliberate indifference to the

plaintiff's constitutional right, and (4) that the policy was the "moving force behind the constitutional violation." *Mabe*, 237 F.3d at 1110–11; *see also supra* Section III.D.

### 1.    Deprivation of a Constitutional Right

*Monell* claims are "contingent on a violation of constitutional rights." *Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (internal quotation marks omitted). As previously explained, *see supra* Section IV.3.1, the Court finds Plaintiffs have plausibly plead a constitutional violation.

### 2.    Legal Theories

"A local government is liable for an injury under § 1983 under three possible theories." *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060. "First, a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'" *Id.* (alteration in original) (quoting *Monell*, 436 U.S. at 694). "Second, a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

### a.    Longstanding Policy, Custom, or Practice

The Parties agree there is no formal policy at issue and Plaintiffs are alleging an informal custom or practice. When examining allegations of an informal custom or practice, liability can "not be predicated on isolated or sporadic incidents; it must be

founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). But "the line between adequate and inadequate evidence of repeated constitutional violations does not involve a specific quantum or number of allegations." *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019). Further, "[c]ourts are 'somewhat split' on the level of detail and the number of similar unconstitutional incidents a plaintiff must show to establish a longstanding practice or custom." *Est. of Kong by & through Kong v. City of San Diego*, No. 22-CV-1858-BAS-DDL, 2023 WL 4939370, at *6 (S.D. Cal. Aug. 2, 2023). While plaintiffs necessarily have "limited access to details of governmental policies and training procedures prior to discovery," plaintiffs relying on prior incidents must still allege incidents that are "substantially similar in character." *Seever v. City of Modesto*, No. 121CV01373JLTEPG, 2022 WL 17418355, at *3 (E.D. Cal. Dec. 5, 2022). "[T]he correct analysis focuses on the similarity between the 'factually pertinent' aspects of the prior incidents." *Id.* (quoting *McCoy v. City of Vallejo*, 2020 WL 374356, at * 4 (E.D. Cal. Jan. 23, 2020)).

While Plaintiffs list numerous "systematic deficiencies,"[13] the thrust of Plaintiffs' *Monell* claim is that the County of San Diego has a custom or practice of improperly screening detainees and putting them into inappropriate and unsafe housing assignments. (*See* B/Q Compl. ¶ 53; R/G SAC ¶ 104; ECF No. 57.) To illustrate this informal practice, Plaintiffs cite to seven cases, the fact that from 2006 through 2020, a total of 185 people

---

[13] Specifically, Plaintiffs Benitez and Quintero allege the following systematic deficiencies: "inadequate medical intake, lack of required training or screening, inadequate diagnosis and treatment of medical conditions, improper housing for inmates with serious medical needs, inadequate safety checks for inmates with serious medical needs and non-compliant policies and procedures." (B/Q Compl. ¶ 96.) Plaintiffs Ramirez and Garcia specifically allege Defendants have a widespread practice of "deny[ing] treatment to inmates in serious medical distress and to place inmates in inappropriate housing not suited to their medical need" (R/G SAC ¶ 104), "not properly screening inmates for medical care or treatment" (*id.* ¶ 105), "failing to communicate the medical needs of inmates between the medical staff and deputies" (*id.* ¶ 106), and not properly checking on the welfare of inmates (*id.* ¶ 106). Plaintiffs Ramirez and Garcia also allege a practice of not properly investigating misconduct and interfering with investigations. (*Id.* ¶¶ 109–110.)

died in San Diego County's jails—a rate higher than any other large county across the State, and a State Auditor's Review of 30 individuals' deaths from 2006 through 2020, which found that some of the individuals had serious medical or mental health needs that the Sheriff's Department's health staff did not identify during the intake process. (*See* B/Q Compl. ¶ 95; R/G SAC ¶ 43.)

The Parties disagree on which of the cases cited are relevant to illustrating a custom or practice. County Defendants argue that of the seven cases Plaintiffs cite, only one— *Estate of Elisa Serna et al v. County of San Diego, et al.*—is relevant because it is the only case concerning alcohol withdrawal. (*See* County MTD at 16.) Plaintiffs argue "[i]t is inconsequential whether such inadequate medical care stemmed from medical emergencies caused by alcohol withdrawal or some other precipitating factor." (B/Q Opp'n at 18.)[14] Neither party has applied the standard correctly. Prior instances must be "substantially similar in character"; this is not so rigid of a standard to only include alcohol withdrawal, as the County Defendants suggest, but also not broad enough of a standard to encompass any medical condition, as Plaintiffs suggest. An incident is not substantially similar to Decedent's medical screening and housing if the severe injury has nothing to do with an intoxicating substance. The Court therefore discounts Plaintiffs' allegations of prior incidents that do not involve a medical issue related to substance abuse. This includes the incidents involving a head injury (*see* B/Q Compl. ¶ 95(g); R/G SAC ¶ 43(g)), seizure condition (*see* B/Q Compl. ¶ 95(b); R/G SAC ¶ 43(b)), and water intoxication (*see* B/Q Compl. ¶ 95(d); R/G SAC ¶ 43(d)). *See Pauu v. Cnty. of San Diego*, No. 23-CV-2162 TWR (SBC), 2024 WL 2980793, at *12 (S.D. Cal. June 13, 2024) (discounting allegations of prior conduct involving off-duty officers or uses of force other than a firearm when the plaintiff was shot by an on-duty officer's firearm and alleged a custom of permitting or condoning the use of excessive force).

---

[14]    At the hearing, Plaintiffs Benitez and Quintero argued that the level of specificity should be at the deprivation of right level and Plaintiffs Garcia and Ramirez argued any form of withdrawal should be sufficient. (*See* ECF No. 57.)

This leaves three cases as relevant examples of prior conduct: (1) *Estate of Elisa Serna et al v. County of San Diego, et al*. (*see* B/Q Compl. ¶ 95(a); R/G SAC ¶ 43(a)) ($15 million dollar settlement regarding a 2019 death when the decedent was in medical observation from alcohol withdrawal); (2) *Estate of Daniel Sisson, et al. v. County of San Diego, et al.* (*see* B/Q Compl. ¶ 95(c); R/G SAC ¶ 43(c)) ($3 million dollar jury award from a 2011 death at VDF when the decedent suffered an asthma attack while suffering from drug withdrawal); and (3) *Victorianne v. County of San Diego* (*see* B/Q Compl. ¶ 95(f); R/G SAC ¶ 43(f)) ($2.3 million dollar settlement from a 2012 death when the decedent suffered a drug overdose after San Diego County jail staff did not put the decedent in medical housing). In addition, the State Auditor's Report from 2022 provides examples of a pattern of improper screening at intake leading to in-custody deaths. (*See* B/Q Compl. ¶ 95(i); R/G SAC ¶ 43(i).) While the entire State Auditor's Report is not included in either complaint, it is properly incorporated by reference into the Ramirez Garcia SAC by hyperlink.[15] The State Auditor's Report explains that "accidental deaths" in San Diego County "mainly included drug overdoses." (R/G SAC at n.2 ("Auditor Report") at 17.) Further, "more individuals died of accidental causes in custody of the San Diego Sheriff's Department than in the custody of each of the comparable counties." (*Id.* at 15; *see also* B/Q Compl. ¶ 95(h); R/G SAC ¶ 43(h) (stating "[f]rom 2006 through 2020, a total of 185 people died in San Diego County's jails—a rate higher than any other large county across the State").) Putting these facts together, drug overdose deaths occurred in San Diego County facilities at a higher rate than in comparable counties. Further, the Auditor Report

---

[15]     "When a plaintiff includes a hyperlink in their complaint, courts have found that the linked item is incorporated by reference therein." *Over Active Imaginations Inc. v. Amazon.com Inc.*, 737 F. Supp. 3d 1094, 1101 n.2 (W.D. Wash. 2024) (quoting *EEOC v. 98 Starr Rd. Operating Co.*, 682 F. Supp. 3d 414, 420 (D. Vt. 2023)). Further, the Court "*sua sponte* may find that a document is incorporated by reference into a complaint." *Sloatman v. Housewright*, No. 221CV08235WLHMAA, 2023 WL 8852375, at *4 (C.D. Cal. Nov. 17, 2023), *report and recommendation adopted*, No. 221CV08235WLHMAA, 2023 WL 8850724 (C.D. Cal. Dec. 18, 2023). While the Benitez/Quintero Complaint did not hyperlink the State Auditor Report, because it is referenced in their Complaint and the Court is ordering all Plaintiffs to file one consolidated complaint, the Court does not need to reach whether the allegations would be sufficient without the details from within the State Auditor's Report.

25-CV-1143 TWR (DDL)

identifies screening in the intake process as a contributor to these deaths. (*See* Auditor Report at 1, 18–19.) For example, the Auditor Report highlights an instance where an intake nurse "determined that an individual needed to have a secondary nurse evaluation because the individual exhibited possible symptoms of drug withdrawal" but never communicated that need and the individual "died 24 hours after completing booking" from a drug overdose. (*Id.* at 20.)

Considering the three specific cases of substance abuse deaths—with one instance occurring at VDF—and the larger trend of accidental deaths in San Diego County custody, which are mainly drug overdose deaths, Plaintiffs have provided enough "factually pertinent" evidence of a pattern or custom by San Diego County of improperly screening and housing individuals going through substance-related severe medical events. *See Seever*, 2022 WL 17418355, at *6 (concluding that five prior instances of similar pertinent factual details, additional incidents showing the alleged pattern at a broader level, and two instances involving a defendant was sufficient to support a custom or practice *Monell* claim). Thus, the Court **DENIES** the County Defendants' Motion to Dismiss Plaintiffs' *Monell* claim based on an informal custom or practice.

### b.    Inadequate Training

Plaintiffs allege County Defendants failed to train employees on "how to recognize when jail inmates are suffering from severe medical distress that requires immediate medical attention and care," when to "immediately summon medical care for inmates who are suffering from severe medical distress," and "how to properly house such inmates." (B/Q Compl. ¶ 110; R/G SAC ¶ 103.) County Defendants argue Plaintiffs' "allegations merely assume that inadequate medical care implies a failure to properly train, which is insufficient to establish a causal link to the Decedent's harm." (County MTD at 18.)

"Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a

constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But the Supreme Court has not "foreclose[d] the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).

Because Plaintiffs have adequately alleged a practice of inadequate screening and improper housing that the County was on notice of, they have plausibly alleged deliberate indifference by the County in continuing to inadequately train staff on how to identify, screen, and house individuals suffering from severe substance abuse medical events. *See Greer v. Cnty. of San Diego*, 726 F. Supp. 3d 1058, 1079 (S.D. Cal. 2023) (denying a motion for summary judgment on the plaintiff's *Monell* failure to train claim when evidence of past similar conduct that had "already harmed numerous prior inmates" provided evidence "that the County knew its continued failure to train, supervise, or discipline was substantially likely to result in other inmates suffering injury"); *see also Connick*, 563 U.S. at 62 (explaining that a policymaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."). This is also sufficient to allege that the failure to adequately train plausibly led to Decedent's inadequate medical treatment and resulting death. *See Est. of Wilson by & through Jackson v. Cnty. of San Diego*, No. 20-CV-457-BAS-DEB, 2020 WL 3893046, at *4 (S.D. Cal. July 10, 2020). The Court therefore **DENIES** the County of San Diego's Motion to Dismiss Plaintiffs' *Monell* claim based on failure to train.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    Plaintiffs Benitez and Quintero's Due Process Claim

County Defendants argue that Plaintiffs Benitez and Quintero's fourth cause of Action for Deprivation of Life Without Due Process is entirely duplicative of the allegations in their third cause of action for Deliberate Indifference.  (*See* County MTD at 25.)    Plaintiffs Benitez and Quintero argue "[w]here both Fourth and Fourteenth Amendment rights are violated, the fact that a cause of action lies under one Amendment 'cannot extinguish' an otherwise viable cause of action under the other."  (B/Q Opp'n at 14 (citing *Manuel v. City of Joliet*, Ill., 137 S. Ct. 911, 918–19 (2017).)  Plaintiffs' argument is unpersuasive since both the third and fourth causes of action rely on the Fourteenth Amendment.  (*See* B/Q Compl. at 26, 29.)

"Courts may dismiss claims that essentially repeat another claim in the same complaint." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 940 (S.D. Cal. 2022).  When a specific constitutional Amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality) (quotation marks omitted); *accord  Graham v. Connor*, 490 U.S. 386, 395 (1989).  Here, both Plaintiffs Benitez and Quintero's fourth and third causes of action are based on the Fourteenth Amendment.  (*See* B/Q Compl. at 26, 29.) Because Plaintiffs' Deprivation of Life Without Due Process claim is duplicative of their Deliberate Indifference claim the Court **DISMISSES** Plaintiff Benitez and Quintero's fourth cause of action for Deprivation of Life Without Due Process.

### F.    State Law Claims

The state law claims—other than Plaintiffs Benitez and Quintero's Section 845.6 claim—against the County of San Diego are subject to dismissal based on statutory immunity.  *See supra* Section II.  Further, Plaintiffs Benitez and Quintero's Section 845.6

claim is subject to dismissal for failure to comply with the Government Claims Act.[16]  *See supra* Section IV.A.  Therefore, the Court considers the merits of the state law claims alleged against the individual County Defendants only.

### 1.    Plaintiffs Benitez and Quintero's Medical Negligence Claim

County Defendants argue Plaintiffs Benitez and Quintero filed their Complaint after the one-year statute of limitations period elapsed because Decedent died on April 12, 2024, and Plaintiffs filed their Complaint on May 5, 2025.  (*See* County MTD at 22–23.)  Further, County Defendants argue because Plaintiffs' Opposition provides "no authority, no analysis, and no effort to explain how the claim could be timely under the applicable limitations period" they have conceded the claim is time barred.  (County Reply at 10.)  Plaintiffs Benitez and Quintero's Opposition argues they sufficiently alleged claims for medical negligence but does not specifically respond to the statute of limitations argument.  (*See* B/Q Opp'n at 25.)  Finding Plaintiffs waived this claim, the Court **DISMISSES** the Plaintiffs Benitez and Quintero's medical negligence claim.  *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132 ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

### 2.    The Bane Act

County Defendants argue Plaintiffs' Bane Act claim fails because "Plaintiffs identify no conduct resembling threat, intimidation, or coercion."  (County Reply at 9.)[17]  The Bane

---

[16]    Even if the Court considered the merits of Plaintiffs Benitez and Quintero's Section 845.6 claim, the Court would find the Section 845.6 claim fails because Plaintiffs only allege that Defendants' medical response was inadequate not that medical treatment was never summoned.  *See Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1198 (E.D. Cal. 2018) ("[R]eliance on § 845.6 is unavailing because, on the facts alleged, medical care was in fact summoned."); *see also Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1087 (E.D. Cal. 2018) (dismissing the Section 845.6 claim when medical care was provided but the plaintiffs disagreed with the treatment).

[17]    County Defendants argue Plaintiffs Benitez and Quintero "offer no other response to the County Defendants' arguments and thus concede dismissal of this claim as to them."  (*Id.* at 8.)  While Plaintiffs Benitez and Quintero's response in their Opposition is fairly conclusory, (*see* B/Q Opp'n at 24), it appears to generally respond to all Defendants' arguments and thus the Court declines to find waiver.

Act protects against all conduct aimed at interfering with rights secured by the constitutional or statutory law of the United States, or of California, "where the interference is carried out 'by threats, intimidation or coercion,' whether or not the offending conduct is motivated by discriminatory animus." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 791 (2017).

County Defendants argue "California district courts are divided on whether deliberate indifference alone can satisfy the coercion requirement." (County Reply at 9.) But the Ninth Circuit has found "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell*, 17 Cal. App. 5th at 798–802 (2017)). Applying *Reese*, Plaintiffs' allegations of deliberate indifference can satisfy the "threat, intimidation, and coercion" element of the Bane Act. Because Plaintiffs plausibly allege a deliberate indifference claim, Plaintiffs also plausibly allege a Bane Act claim. The Court therefore **DENIES** County Defendants' Motion to Dismiss Plaintiffs' Bane Act claim.

## V.    Naphcare Defendants' Motion to Dismiss

Naphcare Defendants argue "neither pleading alleges facts establishing deliberate indifference, negligence, causation, or any Naphcare policy giving rise to *Monell* liability" and thus all claims against Naphcare Defendants should be dismissed. (Naphcare MTD at 1.)

### A.    Sufficient Notice

As a preliminary matter, Naphcare Defendants argue both complaints "are due to be dismissed as each complaint fails to satisfy the notice-pleading standards of Federal Rules of Civil Procedure 8(a) and 10(b) because they are vague, conclusory, and indiscriminately attribute acts and omissions to 'Defendants' as a collective." (*Id.* at 8.) This argument is without merit. Both complaints make specific allegations about Defendant Dai's interactions with Decedent. (*See* B/Q Compl. ¶ 44; R/G SAC ¶ 36.) Further, group pleadings are not barred if the allegations provide fair notice to defendants of claims against

them.  *See Roberts v. Cty. of Riverside*, No. EDCV191877JGBSHKX, 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020).

Next, Naphcare Defendants argue Plaintiffs have failed to plead causation for all causes of action because none of Plaintiffs' theories on how Decedent suffered his head injury implicate Naphcare.  (*See* Naphcare MTD at 1.)  This argument mischaracterizes the level of causation needed.  Plaintiffs allege that Defendant Dai failed to send Decedent for 72-hour treatment, failed to order immediate medication administration even if involuntary, and failed to require that Decedent received specialized housing with close observation.  (*See* B/Q Compl. ¶ 44.)  Plaintiffs allege because of Defendant Dai's lack of proper treatment, Decedent was placed into improper housing at VDF, which resulted in him sustaining his ultimately fatal head injury.  (*Id.* ¶ 47.)  This allegation is sufficient for causation.

### B.    *Section 1983 Claims*
#### 1.    *Plaintiffs Benitez and Quintero's Claims against Does 41-50*

Naphcare Defendants argue that Defendants Does 41–50 should be dismissed because the Benitez/Quintero Complaint does not explain how Does 41–50 violated the claimant's constitutional rights.  (*See* Naphcare MTD at 10.)  Plaintiffs Benitez and Quintero assert "Defendants D[oes] 41-50 were employees or agents of N[aphcare Inc.] . . . who at all times complained of were acting within the course and scope of their employment."  (B/Q Compl. ¶ 26.)  Plaintiffs "must at least attempt to 'refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on . . . [and] allege specific facts showing how *each particular doe defendant* violated his rights.'"  *Hernandez v. San Bernardino Cnty.*, No. ED-CV-2:21-101-JGBSPX, 2023 WL 3432206, at *4 (C.D. Cal. Jan. 26, 2023)  (alterations in original & emphasis added) (quoting *Keavney v. Cnty. of S.D.*, No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)).  Because Plaintiffs fail to do so, the Court **DISMISSES** Plaintiffs Benitez and Quintero's claims against Does 41–50.

/ / /

25-CV-1143 TWR (DDL)

1

### 2.    Deliberate Indifference

2      Defendant Dai, a Physician Assistant employed by Naphcare, is alleged to have

3  assessed Decedent and found that he was experiencing alcohol withdrawal.  (*See* B/Q

4  Compl. ¶ 44.)  Defendant Dai's treatment plan included starting Diazepam on a taper for

5  withdrawal, Keppra for seizure prevention, and recommending a low-bunk assignment.

6  (*Id.*)   But Defendant Dai did not order that the medications should be administered

7  immediately even if involuntary, send Decedent to the ER, nor order specialized housing.

8  (*Id.*)

9      First, Naphcare Defendants argue that Plaintiffs have failed to specifically allege a

10  severe medical need.  (*See* Naphcare MTD at 13; Naphcare Reply at 11.)   The Court

11  disagrees.  Plaintiffs allege Decedent was suffering alcohol withdrawal, which is a severe

12  medical need.  *See Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 948 (N.D. Cal.

13  2015).   Further, at the hearing, Naphcare conceded that severe alcohol withdrawal is a

14  serious medical need.  (*See* ECF No. 57.)

15      Next, Naphcare Defendants argue Plaintiffs do not allege intentional conduct.  (*See*

16  Naphcare MTD at 14.)   But as Naphcare Defendants recognize, Defendant Dai made the

17  intentional choice to recommend a treatment plan included starting Diazepam on a taper

18  for withdrawal, Keppra for seizure prevention, and recommending a low-bunk assignment.

19  (*See* B/Q Compl. ¶ 44.)  Plaintiffs also allege Defendant Dai made the intentional choice

20  not to send Decedent to the ER, order the medications be administered immediately, even

21  if involuntarily, nor to order specialized housing.  (*See id*.)  These intentional choices are

22  enough for a reasonable jury to conclude that Defendant Dai put Decedent at a substantial

23  risk.  *See Castro*, 833 F.3d at 1070–72 (explaining that a defendant's "lack of response"

24  can be an intentional act sufficient for a deliberate indifference claim).   Whether Defendant

25  Dai had the authority to make those choices and whether her treatment plan was a

26  reasonable measure to abate the risk to Decedent are questions of fact not appropriately

27  decided at the motion to dismiss stage.  *See Rainey v. Garcia*, No. 1:08CV01731-

28  AWIYNPPC, 2010 WL 308280, at *4 (E.D. Cal. Jan. 19, 2010), *report and*

*recommendation adopted*, No. 108CV01731AWIYNPGSA, 2010 WL 1033430 (E.D. Cal. Mar. 19, 2010) (reasoning that "whether or not [the d]efendant actually could have provided effective treatment for [the p]laintiff's condition—whether [the defendant] had the resources, authority, or responsibility to provide the necessary treatment—is a question of disputed fact" not appropriate for resolution at the motion to dismiss stage). Thus, the Court **DENIES** Naphcare Defendants' Motion to Dismiss with respect to the deliberate indifference claim against Defendant Dai.

### 3. *Loss of Familial Association*

Because Plaintiffs' deliberate indifference claim survives, *see supra* Section V.B.2, the loss of familial association claim also survives. The Court therefore **DENIES** Naphcare Defendants' Motion to Dismiss with respect to the loss of familial association claim.

### C. *Monell Claims*

A plaintiff may assert *Monell* claims against a private entity contracting with a municipality if the private entity (1) acted under color of state law, (2) a constitutional violation occurred, and (3) the violation was caused by an official policy or custom. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

### 1. *Color of State Law*

Naphcare Defendants do not dispute they were acting under the color of state law. (*See generally* Naphcare MTD.) Even if they did, numerous courts in this Circuit have concluded that medical providers with a contractual relationship with a state entity are acting under the color of state law. *See, e.g., George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 935 (N.D. Cal. 2010) (concluding that a private hospital and physician providing medical services to a county jail inmate pursuant to a contract with the county were state actors). Plaintiffs allege that Naphcare "was the third-party contractor who employed, supervised, and trained medical staff at VDF." (B/Q Compl. ¶ 14.) The Court therefore finds Plaintiffs plausibly allege Naphcare was acting under the color of state law.

/ / /

/ / /

### 2.    *Constitutional Violation*

Naphcare Defendants argue for the *Benitez/Quintero* Complaint, the *Monell* claims fail "substantively because no constitutional deprivation is linked to any NaphCare policy" and the Ramirez/Garcia SAC is also deficient because it "relies on conclusory assertions." (Naphcare MTD at 17–18.)  As previously discussed, *see supra* Section V.B.2, Plaintiffs plausibly allege Defendant Dai committed a constitutional violation.  Accordingly, the Court finds Plaintiffs plausibly allege Naphcare committed a constitutional violation.

### 3.    *Official Policy or Custom*

Naphcare Defendants argue Plaintiffs fail to identify any Naphcare policy, custom, or training deficiency that caused a constitutional violation.  (Naphcare MTD at 17.) Plaintiffs Garcia and Ramirez argue they allege "the County's contract with the Naphcare entities required their employees to be trained in NCCHC standards" and prior to Decedent's "incident, the Naphcare entities were aware of other failures to render emergent medical care to seriously ill inmates in San Diego County jails." (R/G Opp'n at 17 (citing R/G SAC ¶¶ 11–12, 43).)[18]  And Plaintiffs Benitez and Quintero rely on their argument that the County, City, and Naphcare allowed "officers, deputies and medical staff to delay and/or deny medical care to inmates." (B/Q Opp'n at 16.)  Further, Plaintiffs rely on the same evidence as proffered for San Diego County's custom or policy.  (*Id.*; R/G Opp'n at 17.)

The mere contractual relationship between the County of San Diego and Naphcare does not mean both entities have the same policies.  *See Est. of Schuck by & through Schuck v. Cnty. of San Diego*, No. 23-CV-785-DMS-AHG, 2025 WL 2625254, at *22 (S.D. Cal. Sept. 11, 2025) (finding the sharing of a common aim and contract does not impute a policy from the county to the other party).  Further, Plaintiffs do not allege that Naphcare was involved in the cases they rely on.  Because Plaintiffs cannot rely on the evidence of deaths

---

[18]    Plaintiffs Garcia and Ramirez attempt to introduce new evidence of Naphcare's unconstitutional customs or practices in their Opposition, (*see* R/G Opp'n at 18), but these instances cannot be considered in determining whether their SAC plausibly alleges a *Monell* claim against Naphcare.

in San Diego County jails without tying them to Naphcare, they are left with the singular instance of Naphcare's misconduct in this case, which does not rise to the level of an overarching policy. Moreover, Plaintiffs cannot rely on the NCCHC standards as a policy for *Monell* liability because the NCCHC standards would have required Decedent to be transferred to a hospital. *See Valerie Arismendez v. Deputy Velasquez*, No. Cv 19-08767-Cjc (Skx), 2020 WL 6162819 at \*9 (C.D. Cal Aug. 28, 2020) ("*Monell* liability applies where action *pursuant to* an official municipal policy causes a constitutional tort, not where action *contrary to* policy causes one") (emphasis in original). Similarly, while Plaintiffs allege that Naphcare required its employees/agents to be trained in NCCHC standards, (*see* B/Q Compl. ¶ 14; R/G SAC ¶ 11), Plaintiffs do not make any specific allegations that Naphcare failed to provide said training. (*See generally* B/Q Compl.; R/G SAC.) And Plaintiffs cannot rely on the past instances of substance related deaths to illustrate a failure to train because they have not alleged Naphcare was involved in the prior instances. *See Cabanillas v. City of S. Gate*, No. 2:24-CV-08027-ODW (BFMX), 2025 WL 2294327, at \*7 (C.D. Cal. Aug. 8, 2025) (finding the plaintiff failed to plausibly allege a failure to train *Monell* claim when they did not establish a pattern of similar misconduct and did not identify any specific inadequacy in the training). Because Plaintiffs fail to plausibly allege a persistent and widespread policy by Naphcare or a failure to train, the Court **DISMISSES** the *Monell* claims against Naphcare Defendants.

### D. *Qualified Immunity*

Next, Naphcare Defendants argue, assuming they were acting under the color of law as a state actor, they are entitled to qualified immunity. (*See* Naphcare MTD at 18 (citing *Estate of Keith Bach v. County of San Diego*, *et. al*, Case No. 3:24-cv-01687, ECF No. 26).) But, as Naphcare Defendants conceded at the hearing, (*see* ECF No. 57), the Ninth Circuit's decision in *Jensen v. Lane Cnty.*, 222 F.3d 570 (9th Cir. 2000) is controlling. In *Jensen*, the Ninth Circuit held that a private medical provider contracted with a county was not entitled to qualified immunity. *Id.* at 577–79. Therefore, because Naphcare Defendants "are privately employed medical providers, the defense of qualified immunity

is categorically unavailable"; thus, the Court **DENIES** Naphcare Defendants' Motion to Dismiss to the extent it is based on qualified immunity. *Spillard v. Ivers*, No. 21-16772, 2023 WL 4992827, at *1 (9th Cir. Aug. 4, 2023) (citing *Jensen*, 222 F.3d at 577–79).

### E.    State Law Claims

#### 1.    Plaintiffs Benitez and Quintero's Section 845.6 Claim

Because Naphcare Defendants are not public entities nor public employees and Section 845.6 only provides liability for "a public employee" or a "public entity," the Section 845.6 claim necessarily fails in regard to Naphcare. Thus, the Court **DISMISSES** Plaintiffs Benitez and Quintero's Section 845.6 claim against Naphcare Defendants**.**

#### 2.    Negligence and Medical Negligence

Naphcare Defendants argue both complaints "improperly conflate[] the actions and duties of the County and NaphCare, fail[] to allege any specific acts or omissions by NaphCare personnel that breached a duty of care, and fail[] to allege a causal connection between any such conduct and Decedent's injuries or death." (Naphcare MTD at 21.)

As to the Ramierz-Garcia SAC, Plaintiffs allege that Defendant Dai did not act with the "skill and care ordinarily used by healthcare professionals engaged in the practice of their profession in the same or similar locality and under the same or similar circumstances." (R/G SAC ¶ 137.) Further, Plaintiffs allege Defendant Dai did not comply with the NCCHC standards when providing care to Decedent. (*Id.* ¶ 35.) This is enough to plausibly state a claim for medical negligence; therefore, the Court **DENIES** Naphcare Defendants' Motion to Dismiss with regard to medical negligence in the Ramierz-Garcia SAC.

As to the Benitez-Quintero Complaint, Plaintiffs assert both negligence and medical negligence causes of action. (*See generally* B/Q Compl.) Naphcare Defendants argue Plaintiffs only identify the standard of "ordinary care." (Naphcare MTD at 21.) But this argument misstates the Complaint. (*See* B/Q Compl. ¶ 160 (stating "[t]he negligence and carelessness of Defendants consisted of their failure to use that degree of skill and care ordinarily used by healthcare professionals engaged in the practice of their profession in

the same or similar locality and under the same or similar circumstances.").)  Thus, the Court **DENIES** Naphcare Defendants' Motion to Dismiss Plaintiffs Benitez and Quintero's medical negligence and negligence claims.

>    3.    *Wrongful Death*

Naphcare Defendants argue the Ramierz-Garcia SAC's wrongful death claim is "predicated on § 845.6." (Naphcare MTD at 19.)  This is incorrect.  Plaintiffs Ramierz and Garcia asserted "all California state law claims as a basis for state law wrongful death cause of action."  (R/G Opp'n at 21 (citing R/G SAC ¶ 125).)  Because Plaintiffs Ramierz and Garcia plausibly assert a claim for medical negligence and similarly, the Benitez-Quintero Complaint plausibly asserts claims for negligence and medical negligence, the Court **DENIES** Naphcare Defendants' Motion to Dismiss Plaintiffs' wrongful death claim.

>    4.    *The Bane Act*

Naphcare Defendants argue "Plaintiffs have not adequately pleaded a deliberate indifference claim against any NaphCare Defendant let alone the requisite intentional threats, intimidation or coercion required" for a Bane Act violation.  (Naphcare MTD at 23.)  The Bane Act protects against all conduct aimed at interfering with rights secured by the constitutional or statutory law of the United States, or of California, where the interference is carried out "by threats, intimidation or coercion," whether or not the offending conduct is motivated by discriminatory animus.  *Cornell*, 17 Cal. App. 5th at 791.  As previously explained, *see supra* Section IV.F.2, the threat or coercion required for a Bane Act violation does not need to be separate from the constitutional or statutory violation alleged.  *See Reese*, 888 F.3d at 1043.  Because Plaintiffs plausibly allege a deliberate indifference claim against Defendant Dai, Plaintiffs also plausibly allege a Bane Act claim against Naphcare Defendants.  Thus, the Court **DENIES** Naphcare Defendants' Motion to Dismiss Plaintiffs' Bane Act claim.

## VI.    Consolidation of the Complaints and Leave to Amend

As discussed with the Parties at the hearing, (*see* ECF No. 57), the existence of two complaints has posed difficulties in briefing and the effective resolution of this action.

Therefore, in the interest of judicial economy, the Court **ORDERS** the Parties to file one amended consolidated complaint. Because the Court is ordering one amended complaint, some claims will be dismissed with prejudice only as to some of the Plaintiffs. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'") (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)); *see also Moore*, 73 F. Supp. 3d at 1205 (explaining that when a plaintiff fails to address a particular claim in its opposition to a motion to dismiss that claim, "courts generally dismiss it with prejudice") (citation omitted).

Thus, the following claims are dismissed **WITH PREJUDICE** because amendment would be futile: (1) state law claims brought against the County of San Diego, (2) Plaintiff Quintero's survivor and loss of familial association claims, (3) the Section 845.6 claim brought against Naphcare Defendants by Plaintiffs Benitez and Quintero, (4) the Section 845.6 claim brought against County Defendants by Plaintiffs Benitez and Quintero, (5) the loss of familial association and deliberate indifference claims brought by Decedent's Estate, (6) the deliberate indifference claim brought by Plaintiffs Benitez and Quintero in their individual capacities, and (7) the medical negligence claim brought against County Defendants by Plaintiffs Benitez and Quintero. All other claims are dismissed **WITH LEAVE TO AMEND.**

### CONCLUSION

For the foregoing reasons, the Court (1) **GRANTS IN PART AND DENIES IN PART** City Defendants' Motion to Dismiss, (2) **GRANTS IN PART AND DENIES IN PART** County Defendants' Motion to Dismiss, and (3) **GRANTS IN PART AND DENIES IN PART** Naphcare Defendants' Motion to Dismiss. Within twenty-one (21) days of the date on which this Order is electronically docketed, Plaintiffs **SHALL FILE** an amended consolidated complaint. Defendants **SHALL ANSWER** Plaintiffs' amended consolidated complaint or **SHALL RESPOND** to Plaintiffs' amended consolidated

1  complaint within <u>forty-two (42) days</u> of the date on which this Order is electronically

2  docketed.

3      **IT IS SO ORDERED.**

4  Dated:  January 29, 2026

5

6                                        Honorable Todd W. Robinson
                                         United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25-CV-1143 TWR (DDL)